**Hong Van NGUYEN, Plaintiff,**

v.

**IBP, INC., Defendant.**

**No. 94–4046.**

United States District Court,
D. Kansas.

Sept. 22, 1995.

---

Brent C. Moerer, Topeka, KS, Gary E. Patterson, Patterson, Nelson, Nolla & Witteman, L.C., Wichita, KS, for plaintiff.

J. Nick Badgerow, Michaela M. Warden, Spencer, Fane, Britt & Browne, Overland Park, KS, for defendant.

### MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the defendant's motion for summary judgment (Dk.38). The plaintiff, Hong Van Nguyen ("Nguyen"), is a former employee of IBP, Inc. ("IBP") and brings this suit alleging he was discharged in retaliation for reporting a work-related injury, in violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12117, and in breach of an implied employment contract. By order filed September 1, 1995, the court granted the defendant's motion for summary judgment and explained that a memorandum and order would follow setting forth the reasons for its decision. The court submits the following as its memorandum and order.

### SUMMARY JUDGMENT STANDARDS

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "[T]here are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.*, 849 F.2d 1269, 1273 (10th Cir.1988).

The initial burden is with the movant to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). If this burden is met, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to" the nonmovant's claim or position. *Martin v. Nannie and Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993) (citations omitted). The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; it requires " 'present[ing] sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor.' " *Thomas v. International Business Machines*, 48 F.3d 478, 484 (10th

Cir.1995) (quoting *Bacchus Industries, Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991)). The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmovant. *Id.* A party relying on only conclusory allegations cannot defeat a properly supported motion for summary judgment. *White v. York Intern. Corp.*, 45 F.3d 357, 363 (10th Cir.1995).

More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). At the same time, a summary judgment motion does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences. *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 346 (10th Cir. 1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

## STATEMENT OF UNCONTROVERTED FACTS

For purposes only of this motion for summary judgment, the court considers the following facts, as so stated, to be uncontroverted:

1. On June 22, 1992, the plaintiff Nguyen began working for IBP at its plant in Emporia, Kansas. He worked in the production department as a meat processor or "deboner." Nguyen speaks little English and needs an interpreter in most matters involving the English language.

2. On October 30, 1992, Nguyen reported a work-related injury to his hand. He sought treatment from a physician who restricted his work to light duty. The treating physician also prescribed physical therapy which began on February 25, 1993.

3. IBP complied with the treating physician's restrictions and prescriptions. It temporarily placed Nguyen in a light-duty position known as a "picker." It also gave him time off for the scheduled physical therapy appointments.

4. According to the physical therapist, Nguyen missed five scheduled physical therapy appointments between February 25, 1993, and March 12, 1993.

5. Nguyen admits missing a physical therapy appointment on February 26, 1993, and explains that he fell asleep and forgot it.

6. Nguyen admits missing another physical therapy appointment scheduled for noon on March 8, 1993. When he reported to work that afternoon for his 3:30 p.m. to 11:45 p.m. shift, his supervisor, LaChelle Schamle, questioned him about missing the physical therapy appointment. Nguyen told her that his car would not start, that it had been towed, and that he had no transportation to his appointment. Nguyen later rode to work with a friend who also was employed at IBP.

7. On March 10, 1993, Rodger D. Brownrigg, IBP's Complex Personnel Manager, presented Nguyen with a letter regarding the missed physical therapy appointment. An interpreter read the letter to Nguyen. The letter states in relevant part:

It has been brought to my attention that you recently missed a scheduled medical appointment. This is contrary to our Medical Management Policy and to your obligation as an IBP employee.

Your safety and health in the workplace is not just IBP's responsibility—*the responsibility is shared by you.* Your acceptance of this responsibility is not voluntary; it is a condition of employment at IBP.

The Company has devoted a great deal of time and effort developing excellent safety and medical management programs. But these are only as good as the employees' cooperation and their complete acceptance of their personal responsibility for safety and occupational health.

Simply put, you must attend all scheduled doctor, therapy, and Health Service appointments unless a true emergency intervenes. The Health Services Department must be advised, in advance, if it is necessary to change an appointment for other reasons. Further violation of this rule may jeopardize any benefits under Workers' Compensation and can result in disciplinary measures under our Company rules. Blatant violations can result in you

being sent home, without pay, until the appointment is made up.

We have only your well-being in mind. Please give this letter your serious consideration and your renewed commitment to our safety and medical programs.

(Dk. 39, Ex. F). Nguyen gave Brownrigg the same excuse of his car not starting and being towed to a garage for repairs. During his recount of car problems, Nguyen described his car as a Dodge "minivan." Because Nguyen had given dubious excuses for missing work and physical therapy appointments on earlier occasions, Brownrigg was suspicious and asked Nguyen to bring in the bill for the car repair work done on March 8, 1993.

8. Nguyen did not bring the car repair bill to Brownrigg on March 11, 1993. Brownrigg asked again for the repair bill on March 15, 1993. Nguyen told Brownrigg that his friend had the car towed for repairs and he did not know the name of the garage where the car had been taken. When Nguyen said that a woman who worked at IBP had recommended the garage, Brownrigg visited with this employee. The female employee told Brownrigg that she did not know what Nguyen was talking about. Brownrigg then told Nguyen that based on everything Nguyen had said and his past stories he "felt" Nguyen was not being truthful and that he could be terminated for falsification. Brownrigg instructed Nguyen that "the only way this is going to be resolved is if you bring in the bill. I said that is all I need. You bring in the bill, we will get you back to work." (Brownrigg Dep. at 52–53).

9. On March 16, 1993, Nguyen reported to Brownrigg that his friend had his copy of the car bill and that he could not find his friend. Brownrigg told Nguyen "that he could stay at home until he brought the bill in; and I would leave it on indefinite suspension until further notice." (Brownrigg Dep. at 53).

10. On March 18, 1993, Brownrigg telephoned all the wrecker services in the Emporia phone book and asked each if it had towed a Dodge Caravan or Voyager to a repair shop on March 8, 1993. Brownrigg learned that none of the wrecker services had done so. Having received no car repair bill from Nguyen and having investigated enough to believe that Nguyen's excuse was false, Brownrigg decided to terminate Nguyen on March 18, 1993. Nguyen completed his departure form at IBP that same day, and "falsification" is handwritten on the form as the apparent reason for Nguyen's termination. Brownrigg testified that he fired Nguyen for giving false reasons for the missed physical therapy appointment.

11. When he was hired at IBP, Nguyen had read to him a form that disclosed first offenses which could result in his immediate discharge. He also signed that form. One of the offenses listed on that form is falsification of company documents or absences.

12. On or about March 25, 1993, Nguyen attempted to visit the IBP personnel office with a receipt showing that car repairs were made on a 1985 Dodge Colt Vista on March 8, 1993. Nguyen avers that he did not receive his copy of the receipt until March 24, 1993. The IBP security guard would not allow Nguyen on IBP's premises because he had been terminated.

13. Nguyen avers that he hired a friend, known to him only as Tam, to take his car to the repair shop. Tam, who spoke English, took the car to the repair shop on March 8, 1993, and Nguyen gave Tam the money to pay for the repairs on March 9, 1993. Nguyen avers he did not know where Tam took the car. On March 10, 1993, Tam moved from Emporia to Dodge City and kept the receipt apparently until March 24, 1993.

14. The receipt for the repairs shows the customer complained only that the car "runs rough." The receipt does not mention that the car did not start, that the car was towed to the repair shop, or that the garage billed for any towing charges.

15. On March 23, 1993, Nguyen applied for supplemental security income benefits from the Social Security Administration. In those proceedings, Nguyen claimed his disability began on March 13, 1993, five days before IBP terminated him. The administrative law judge ("ALJ") in his written order summarized Nguyen's testimony as follows:

The claimant testified in support of the application for disability benefits. In summary, the claimant testified that due to his

impairments and their resulting limitations, he is unable to perform the duties of his past work or any other work. He testified that he has impairments of the left hand and the neck. He is left handed. He injured his left hand at work. He has no feeling in his left hand. He drops things and cannot lift things with the left hand. He has had physical therapy on the left hand, but it did not help. He feels his neck injury occurred at about the same time his hand injury occurred. His neck is getting worse daily. It is stiff and he must turn his whole body to turn another direction. He has headaches, but feels they are a result of his neck pain.... He cannot tie his shoe laces so he wears loafers.... He does not drive an automobile. He walks to the grocery store which is close to his apartment. He cannot carry very much weight. His doctor told him he could lift about two pounds. He cannot reach over his head with the left hand. His friend takes him to the laundry mat and helps him with the laundry and vacuuming. He becomes depressed because he cannot get a job. When feeling depressed, he goes for a walk. He lies down during the day due to pain.

(Dk. 39, Ex. L at pp. 2–3). Based on all the evidence, including Nguyen's testimony, the vocational expert's testimony, and Nguyen's medical records, the ALJ found that Nguyen had not engaged in substantial gainful activity since March 23, 1993, and that he was unable to perform his past relevant work as a deboner, hand packager, and lamp assembler. The ALJ also found that Nguyen was under a "disability" as that term is used in social security laws.[1]

16. During his deposition, Nguyen's counsel referred him to the part of the ALJ's order that summarized Nguyen's testimony. Nguyen's counsel asked him if it was correct that he could not perform the duties of his past work or any work. Nguyen testified that it was incorrect and that he was still able to do light-duty work such as picking

fat. IBP's counsel then asked Nguyen twice whether he testified before the ALJ that he could not do his past work or any other work. When the questioned was asked the first time, Nguyen answered:

I told them that I did apply to several other companies but they never accepted me. But I still have my right hand and I can do some light-duty work but, you know, when I apply for a job they didn't accept me. I can sweep the floor with the brooms too, but I can only use one hand; but still very difficult. I already told them that.

(Nguyen's Dep. at 82). When the question was repeated, Nguyen responded this time:

I told them that I cannot do a hard—heavy-duty job, but just ask me if I, you know, something drop on the floor would I be able to pick it up, I would have a problem to, you know, bend down and pick it up, that's tough, that's what I told the judge.

(Nguyen's Dep. at 83).

17. After Nguyen's injury, IBP temporarily assigned to the light-duty position of "picker" which required him to pick bones, cartilage and foreign objects off the trim belt and put them in a small pan located directly behind him. IBP did not set any standard production requirements for a picker, as these positions were held by employees who were recovering from injuries and the amount of their work depended on a number of variables, including the extent of their injury. Prior to Nguyen's discharge, his supervisor had assessed Nguyen's work as a picker to be satisfactory.

18. IBP considered Nguyen's light-duty position of picker to be one of the temporary positions reserved for injured employees working under medical restrictions during their period of recuperation. IBP's practice with respect to these positions was as follows. When the physician determined that the employee's injuries had reached maxi-

---

1. At page five of his order, the ALJ concluded that the date of disability was March 21, 1993. At page six, the ALJ then refers to March 23, 1993, as the date of disability. The latter date is when Nguyen applied for benefits, and the former date is not mentioned anywhere else in the ALJ's order. Nothing in the ALJ's decision explains why he found Nguyen disabled as of March 23, 1993, as opposed to March 13, 1993, the onset date alleged by Nguyen. The ALJ does not refer to any events occurring between those dates.

mum improvement, IBP placed the employee in an available job that was consistent with any continuing work restrictions. If no such work was open or existing, the employee was placed on a leave of absence for up to one year in the hope that some job became available. The employee was discharged if the leave of absence expired before the employee could be placed in any available position.

19. Nguyen avers that when he was hired the person at orientation told him that "as long as I [he] worked hard and did what I [he] was told to do I [he] would not be fired."

20. During his deposition, Brownrigg gave a "very big ball park" estimate that he terminated between twenty-five to one hundred employees over the last twelve months. Brownrigg testified that for every employee he terminated the past year or, for that matter, he ever terminated at IBP, he believed there was good reason and just cause for doing so.

21. On April 12, 1993, Nguyen filed for workers' compensation as a result of his work related injury.

## DISCUSSION

▮ Kansas employment law is grounded on the doctrine of employment-at-will, that is, absent an express or implied contract "between an employee and his employer covering the duration of employment, the employment is terminable at the will of either party, and the employee states no cause of action for breach of contract by alleging that he has been discharged." *Morriss v. Coleman Co.*, 241 Kan. 501, 510, 738 P.2d 841 (1987) (citing *Johnson v. National Beef Packing Co.*, 220 Kan. 52, 551 P.2d 779 (1976)). This means an employer may discharge an employee-at-will "for good cause, for no cause, or even for wrong cause" without subjecting itself to legal liability. *Id.* at 508, 738 P.2d 841. The only exceptions to this rule are based on public policy. *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 176, 872 P.2d 252 (1994). The first exception is that the employer may not discharge the employee in retaliation for filing a workers' compensation claim, *Murphy v. City of Topeka*, 6 Kan.App.2d 488, Syl. ¶ 7, 630 P.2d 186 (1981) or for being absent or not calling in an anticipated absence because of a work-related injury, *Coleman v. Safeway Stores, Inc.*,

242 Kan. 804, Syl. ¶ 3, 752 P.2d 645 (1988), or for intending to file a worker's compensation claim, *Chrisman v. Philips Industries, Inc.*, 242 Kan. 772, 775, 751 P.2d 140 (1988). The second exception is that the employer may not discharge " 'an employee in retaliation for the good faith reporting [whistle-blowing] of a serious infraction of such rules, regulations, or the law by a co-worker or an employer to either company management or law enforcement officials.' " *Ortega v. IBP, Inc.*, 255 Kan. 513, 517, 874 P.2d 1188 (1994) (quoting *Palmer v. Brown*, 242 Kan. 893, 900, 752 P.2d 685 (1988)).

*Retaliatory Discharge Claim*

▮ An employer rarely admits to a retaliatory intent; therefore, the employee must look to circumstantial evidence in proving the claim. *Marinhagen v. Boster, Inc.*, 17 Kan.App.2d 532, 540, 840 P.2d 534 (1992), *rev. denied*, 252 Kan. 1092 (1993). Because reasonable persons may differ on the inferences critical in determining a person's state of mind, summary judgment is more often the inappropriate way of resolving the issue of an employer's retaliatory intent. *See Koopman v. Water Dist. No. 1 of Johnson County*, 972 F.2d 1160, 1164 (10th Cir.1992). Nevertheless, when the employee fails to come forth with sufficient evidence to raise a genuine issue regarding the employer's intent or an essential element of her retaliatory discharge claim, the district court may properly grant an employer's motion for summary judgment. *See Koopman*, 972 F.2d at 1164.

▮ The burden rests with the employee to prove that the employer terminated him or her for exercising rights under the Workers' Compensation Act. *See Ortega*, 255 Kan. at 528, 874 P.2d 1188. The employee can recover only upon proving that the discharge was "based on," "because" of, "motivated by" or "due to" the employer's intent to retaliate. *Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, 146–148, 815 P.2d 72 (1991). The employee need not prove that retaliation was the employer's sole motive or reason for the termination. *Brown*, 249 Kan. at 147, 815 P.2d 72. The employee must prove her claim "by a prepon-

derance of evidence, but the evidence must be clear and convincing in nature."[2]

*Ortega*, 255 Kan. at 528, 874 P.2d 1188.

■ The federal district courts in Kansas have adapted the burden-shifting approach used in discrimination cases for analyzing state-law retaliatory discharge claims. *Huffman v. Ace Elec. Co., Inc.*, 883 F.Supp. 1469, 1475 (D.Kan.1995); *Lawrence v. IBP, Inc.*, No. 94–2027–EEO, 1995 WL 261144, at *11 n. 2, 1995 U.S.Dist. LEXIS 6118, at *29 n. 2 (D.Kan. Apr. 21, 1995); *see, e.g., Robertson v. IBP, Inc.*, No. 94–2047–GTV, 1995 WL 164034, 1995 U.S.Dist. LEXIS 4465 (D.Kan. Mar. 27, 1995); *Rosas v. IBP, Inc.*, 869 F.Supp. 912, 916 (D.Kan.1994); *cf. Ortega*, 255 Kan. at 526, 874 P.2d 1188 (After noting the causal nexus between the employee's protected activity and the employer's adverse action, the Kansas Supreme Court referred to the burden-shifting scheme from *McDonnell Douglas* as the approach it utilizes in discrimination and free speech employment cases). To establish a prima facie case of retaliatory discharge, the plaintiff must show (1) that he filed a claim for workers' compensation benefits or sustained a work-related injury for which he could assert a future claim for such benefits; (2) that the employer had knowledge of the plaintiff's compensation claim or the fact that he had sustained a work-related injury for which he could file future claim for benefits; (3) that the employer terminated his employment; and (4) that a causal connection existed between the protected activity or injury, and the termination. *Huffman*, 883 F.Supp. at 1475; *Rosas*, 869 F.Supp. at 916; *Chaparro v. IBP, Inc.*, 873 F.Supp. 1465, 1472 (D.Kan.1995). Proof of a prima facie case raises " 'a rebuttable presumption' " of a retaliatory intent. *See Ingels v. Thiokol Corp.*, 42 F.3d 616, 621 (10th Cir.1994) (quoting *Branson v. Price*

*River Coal Co.*, 853 F.2d 768, 771 (10th Cir. 1988)); *Rosas*, 869 F.Supp. at 916.

■ Once the plaintiff employee establishes a prima facie case, it becomes the employer's burden to produce a legitimate, nondiscriminatory reason for the discharge. *Huffman*, 883 F.Supp. at 1475. While its reason must be specific and clear, the employer need not litigate the merits of its reason, prove its reason was bona fide, nor prove its reason was applied in a nondiscriminatory fashion. *E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1316 (10th Cir.1992) (citations omitted). Once the employer produces such a reason, the presumption of retaliatory intent raised by the prima facie case " 'simply drops out of the picture.' " *Ingels*, 42 F.3d at 621 (quoting *St. Mary's Honor Center v. Hicks*, —— U.S. ——, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). The burden of persuasion now falls back to the employee to prove with clear and convincing evidence that the employer acted with a retaliatory intent. *Rosas*, 869 F.Supp. at 916.

■ To avoid summary judgment at this point in the analysis, the employee must assert specific facts establishing a triable issue as to whether the employer's reason for discharge is a mere cover-up or pretext for retaliatory discharge. *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir. 1994). "If no facts relating to the pretextuality of the defendant's action remain in dispute, summary judgment is appropriate." *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 798 (10th Cir.1993), *overruled in part on other grounds, Buchanan v. Sherrill*, 51 F.3d 227, 229 (10th Cir.1995). On the other hand, should the plaintiff come forth with a prima facie case and evidence that the defendant's reasons are pretextual, the case must go to the jury. *Jones v.*

**2.** "Clear and convincing" refers to the quality of proof, not the quantum. *Newell v. Krause*, 239 Kan. 550, 557, 722 P.2d 530 (1986). For the evidence to be clear and convincing,

> the witnesses to a fact must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the details in connection with the transaction must be narrated exactly and in order; the testimony must be clear, direct and weighty; and the

witnesses must be lacking in confusion as to the facts at issue.

*Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 226 Kan. 70, 78, 596 P.2d 816 (1979) (citations omitted). The evidence is clear "if it is certain, unambiguous, and plain to the understanding. It is convincing if it is reasonable and persuasive enough to cause the trier of facts to believe it." *Ortega*, 255 Kan. at 528, 874 P.2d 1188 (*citing Chandler v. Central Oil Corp.*, 253 Kan. 50, 58, 853 P.2d 649 (1993)).

*Unisys Corp.,* 54 F.3d 624, 630 (10th Cir. 1995).

IBP concedes the first three elements of Nguyen's prima facie case but argues he is unable to establish a causal connection between his discharge and his injury. Because his work was otherwise satisfactory, Nguyen maintains he would not have been discharged but for his injury and the physical therapy prescribed for it. Nguyen next argues that IBP's articulated reason for discharging him was his missed physical therapy appointments and, therefore, is within the rule that the employer may not discharge an employee for absences or failing to call in anticipated absences that are the result of a work-related injury. *Coleman v. Safeway Stores, Inc.,* 242 Kan. at 804, Syl. ¶ 3, 752 P.2d 645.[3] Finally, Nguyen insists that a discharge for missed physical therapy appointments arbitrarily exceeds the sanction specified in IBP's own medical management policy on missed medical appointments and contravenes the letter and spirit of regulations and provisions under the Kansas Workers' Compensation Act governing an employee's cooperation with medical treatment.

■■■ Under the *McDonnell Douglas* burden-shifting scheme, the prima facie case is not an onerous burden. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Still, the court must satisfy itself that the plaintiff's evidence is enough to sustain a rebuttable inference of the employer's retaliatory intent. The plaintiff's evidence barely clears that threshold. Reasonable minds could differ over whether the five months between Nguyen's injury and his termination amounts to a temporal nexus. Arguably, Nguyen can assert that the situation leading to his termination arose from his work-related injury. Without an injury, he would not have had a physical therapy appointment to miss and would not have had to explain the missed appointment or document his car repairs. These circumstances, though admittedly subject to differing interpretations, are enough to sustain an inference of retaliatory intent in the absence of other evidence.

■■■ IBP's legitimate, nondiscriminatory reason for terminating Nguyen is that it believed Nguyen falsified the reasons for his missed physical therapy appointment on March 8th. Brownrigg believed that Nguyen attempted to deceive the supervisor and him with a story that Nguyen's Dodge minivan would not start, that it had to be towed to the repair shop, and that Nguyen had no transportation to his therapy appointment. Brownrigg knew of Nguyen's earlier excuses for missing work and therapy appointments and had become skeptical of Nguyen's truthfulness. After hearing Nguyen's latest excuse for missing another therapy appointment, Brownrigg asked to see the car repair bill. Nguyen did not bring the repair bill in the next day as requested. After the weekend, Brownrigg again visited Nguyen and asked to see the repair bill. Nguyen told Brownrigg that a friend had arranged for the car to be towed to a garage that a co-worker had recommended. When Nguyen said he did not know the name of the garage, Brownrigg spoke with the co-worker who told Brownrigg that she did not know what Nguyen was talking about. At this point, Brownrigg told Nguyen that based on Nguyen's current explanation and past stories he felt that Nguyen was not being truthful and that he could be terminated for falsification. Brownrigg then repeated his request that Nguyen bring in the car repair bill the next day. The next day Nguyen told Brownrigg that he did not have the repair bill and that he could not find his friend who had the bill. Brownrigg told Nguyen to go home as he could not work until the repair bill was presented. Two days later, on March 18, 1993, Brownrigg telephoned all the wrecker services in the Emporia phone book and asked each if a Dodge Caravan or Voyager had been towed to a repair shop on March 8, 1993. Learning that none of the wrecker services had done so and having yet to see the car repair bill, Brownrigg terminated Nguyen.

Nguyen was put on notice when hired that falsification of absences was grounds for immediate discharge. On these circumstances, IBP had cause to fire Nguyen and its deci-

---

**3.** Nguyen never attempts to demonstrate that his missed appointments were due to his injuries.

sion is consistent with its own policy. Nguyen does not come forth with proof on which a reasonable factfinder could conclude that IBP was more likely motivated by its retaliatory intent or that IBP's reason for discharge is unworthy of credence.

The fact that IBP did not rehire Nguyen when he appeared at IBP's plant a week after his termination with a receipt for the car repairs does not evidence pretext. Brownrigg impressed upon Nguyen the importance and urgency of seeing the car repair invoice. Brownrigg warned Nguyen that he was suspected of fabricating an excuse and that termination could result from falsification. Despite these warnings, Nguyen did not produce the invoice within the reasonable time that Brownrigg gave him but waited until a week after his termination. Brownrigg did not fire Nguyen on the mere suspicion of falsification but investigated Nguyen's story. He spoke with the co-worker who supposedly had recommended the garage where Nguyen's minivan had been taken. She knew nothing about it. Brownrigg called every wrecker service in Emporia. They had not towed a Dodge minivan on March 8, 1993. Under all these circumstances, IBP was well within its right to stand by its termination decision, and should not have that decision questioned as pretextual simply because Nguyen eventually decides to document his story but only after his termination. In addition, the invoice supplied by Nguyen does not show that his was inoperable on March 8, 1993, or that it had been towed to the garage.

That Nguyen now can possibly explain away one or more of the falsehoods in his excuse as simple miscommunications does not go to prove pretext.[4] IBP had no reason to doubt that it understood Nguyen as saying that he did not make his physical therapy appointment on March 8, 1993, because his car was inoperable and had been towed to the repair shop. Only after it suspected Nguyen of deceit, offered him a reasonable chance to prove his story, and then investigated and confirmed its suspicion, did IBP terminate Nguyen. Nguyen comes forth with no evidence of a clear and convincing quality that IBP acted unreasonably, arbi-

trarily, or disparately in terminating him for falsification.

IBP's conduct does not reveal that it was more likely motivated by any retaliatory intent. There is no dispute that IBP acknowledged Nguyen's injury and worked to accommodate his recuperation from it. It temporarily assigned Nguyen to light-duty work that he says he was able to perform. Nguyen does not complain that the picker work aggravated his injury or prevented his recovery. IBP allowed him time off for his physical therapy appointments, and impressed upon Nguyen the importance of cooperating with the prescribed medical treatment. In short, IBP did what was expected of it—cooperating with and encouraging an injured employee towards recovery—and terminated Nguyen for not doing what was expected of him—telling his employer the truth. The evidence here is simply not of a clear and convincing nature for a reasonable jury to find that IBP acted with a retaliatory intent.

*Disability Discrimination under the ADA*

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state a prima facie case of disability discrimination on an employment termination claim, the plaintiff must demonstrate: "(1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, that is, with or without reasonable accommodation (which he must describe), he is able to perform the essential functions of the job; and (3) that the employer terminated him because of his disability." *White v. York Intern. Corp.*, 45 F.3d at 360–61 (citations omitted). IBP argues that Nguyen is unable to prove the second and third elements of his prima facie case.

A "qualified individual with a disability" is defined by the ADA as "an individual with a disability who, with or without reasonable accommodation, can perform the essen-

---

4. Nguyen referred to his Dodge Colt Vista as a "minivan."

tial functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see White,* 45 F.3d at 360. To determine whether a person is qualified for purposes of the ADA, the Tenth Circuit endorses a two-part analysis:

First, we must determine whether the individual could perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue. Second, if (but only if) we conclude that the individual is not able to perform the essential functions of the job, we must determine whether any reasonable accommodation by the employer would enable him to perform those functions.

*Id.* at 361–62; (quoting *Chandler v. City of Dallas,* 2 F.3d 1385, 1393–94 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994)); *see Milton v. Scrivner, Inc.,* 53 F.3d 1118, 1123 (10th Cir.1995). The plaintiff carries the burden of demonstrating that he could perform the essential functions of his job with reasonable accommodations. *Lucero v. Hart,* 915 F.2d 1367, 1371 (9th Cir.1990); *Rhodes v. Bob Florence Contractor, Inc.,* 890 F.Supp. 960, 963–64 (D.Kan.1995).

Less than a week after he was fired, Nguyen applied for supplemental security income benefits from the Social Security Administration. He represented on the application that he was disabled as of March 13, 1993, due to impairments of the back and left hand.[5] As reflected in the ALJ's decision, Nguyen gave sworn testimony that he was unable to perform his past work or any other work. He further testified that he has no feeling in his left hand and cannot lift things with it. He also said that he experienced a neck injury about the same time as his hand injury. He told the ALJ that he could not carry much weight and that his doctor said he should not lift more than two pounds. In describing his daily activities, Nguyen related that a friend assisted him with household chores and that he lies down during the day because of the pain. Based on all the evidence, including Nguyen's testimony, the vocational expert's testimony, and Nguyen's medical records, the ALJ found that Nguyen had not engaged in substantial gainful activity since March 23, 1993, and that Nguyen was unable to perform his past relevant work as a deboner, hand packager, and lamp assembler. The ALJ concluded that Nguyen was under a "disability" as that term is used in social security laws.[6]

Federal courts facing similar situations have ruled as a matter of law that the plaintiff was not a "qualified individual with a disability." *Cheatwood v. Roanoke Industries,* 891 F.Supp. 1528 (N.D.Ala.1995) (and cases cited therein). The courts agree that an employee who represents on a benefits application that he is disabled and unable to perform the duties of their former jobs is judicially estopped from arguing that he is capable of performing the essential functions of his former work. *See, e.g., Cheatwood v. Roanoke Industries,* 891 F.Supp. 1528 (plaintiff with back injury who testified in workers' compensation proceeding to physical problems and work restrictions was "bound by his prior testimony that he could not perform the essential functions of his prior job."); *McNemar v. Disney Stores,* No. 94–6997, 1995 WL 390051, at *3–5, 1995 U.S.Dist. LEXIS 9454, at *9–*15 (E.D.Pa. June 30, 1995) (plaintiff with AIDS who certified under penalty of perjury on his applications for social security disability benefits and for New Jersey disability benefits that he was totally and permanently disabled was "judicially estopped from arguing that he is qualified to perform the duties of the position involved."); *Garcia–Paz v. Swift Textiles, Inc.,* 873 F.Supp. 547, 555 (D.Kan.1995) (plaintiff with multiple sclerosis who on applications for long-term disability insurance benefits and

---

5. The court is well aware that a person seeking social security benefits must sign an application on which he represents that everything contained thereon is true to the best of his knowledge.

6. The court is well aware that a person is not disabled under social security law unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

social security benefits affirmed that she was disabled from her former work was "estopped from claiming otherwise."); *Kennedy v. Applause, Inc.*, No. 94–5344, 1994 U.S. Dist. LEXIS 19216, 1994 WL 740765 (C.D.Cal. Dec. 7, 1994) (plaintiff with chronic fatigue syndrome who on forms for state disability benefits and social security disability benefits certified that she was disabled was prevented from arguing otherwise.); *see also August v. Offices Unlimited, Inc.*, 981 F.2d 576, 580–81 (1st Cir.1992) (plaintiff who attested on disability insurance benefit forms that he was "totally disabled" could not establish that he was a "qualified handicapped person" under Massachusetts law); *Beauford v. Father Flanagan's Boys' Home*, 831 F.2d 768, 770 (8th Cir.1987) (plaintiff who told employer that she was unable to work because of physical and mental problems and then applied for disability insurance benefits based on the same was considered as having admitted that she was not a qualified handicapped individual under the Rehabilitation Act of 1973), *cert. denied*, 485 U.S. 938, 108 S.Ct. 1116, 99 L.Ed.2d 277 (1988); *Reigel v. Kaiser Foundation Health Plan of North Carolina*, 859 F.Supp. 963, 967–70 (E.D.N.C. 1994) (plaintiff with shoulder injury who in statements for disability insurance benefits had certified her total disability was unable to demonstrate that she was qualified to perform the essential functions of her job).

It is uncontroverted that Nguyen claimed and certified in the social security proceedings that he was disabled as of March 13, 1993, and testified therein that he could not perform the duties of his former work. Based on his representations and testimony and the medical evidence, he was awarded social security benefits. It is impossible for Nguyen to have been both disabled under

social security law and able to perform the essential functions of his work under the ADA. As the court in *Reigel* said:

> Plaintiff in the case *sub judice* cannot speak out of both sides of her mouth with equal vigor and credibility before this court. Plaintiff now seeks money damages from the Medical Group on her assertion that she was physically willing and able to work during the same period of time that she was regularly collecting disability payments on her assertions that she was physically unable to work.

859 F.Supp. at 970. Even if the court were not to use this doctrine of judicial estoppel, the court believes that the proceedings before the ALJ, as reflected in his written order, including Nguyen's sworn testimony, Nguyen's medical records, and the vocational expert's testimony is such compelling evidence that a reasonable jury could not find that Nguyen could perform the essential functions of his work in the production department at the IBP.[7]

Nguyen argues he was still physically capable of performing the light-duty "picker" position that IBP had temporarily assigned him during his recuperation. He asserts that his permanent assignment to the "picker" position would be a reasonable accommodation. This argument is flawed in two respects. First, by reason of what he certified and testified to as his disability in the social security proceedings, Nguyen is judicially estopped from claiming here that he is capable of performing the essential functions of any production department work that he had been doing at IBP. Second, because IBP treated as temporary all assignments to the light-duty picking position,[8] his permanent assignment to that position is not

---

7. Nguyen attempts to distinguish his case by arguing that the Social Security Administration found him disabled as of March 23, 1993, while IBP terminated him on March 18, 1993. Nguyen concludes that while "his damages may be reduced, ... [he] is not estopped from asserting the true facts of this case." (Dk. 46 at 22). Nguyen offers no evidence that remotely suggests anything happening after March 18, 1993, and before March 23, 1993, which would explain why Nguyen was disabled as of the latter date but not the earlier date. More importantly, Nguyen certified on his social security application that he was disabled as of March 13, 1993.

8. IBP sets aside certain light-duty jobs, like the picker position, just for employees who are under medical management. Standard production requirements do not exist for these positions; supervisors simply evaluate whether the injured employee is putting forth sufficient effort considering his medical restrictions. IBP treats these light-duty jobs as temporary assignments given to injured employees during their period of recuperation. As long as the employee is still recuperating and is subject to medical restrictions, IBP will allow the employee to retain the light-duty position.

a reasonable accommodation. *See Champ v. Baltimore County,* 884 F.Supp. 991, 999–1000 (D.Md.1995) (Even though the police officer after losing the use of one arm had worked for sixteen years at different light-duty assignments, the court found that because the police department treated all light-duty assignments as temporary, no vacant, permanent light-duty positions existed as a reasonable accommodation.). In *Howell v. Michelin Tire Corp.,* 860 F.Supp. 1488, 1492 (M.D.Ala.1994), the court laid out the following rules:

> Reasonable accommodation, however, does not require that an employer create a light-duty position or a new permanent position. But, if an employer has a vacant light-duty position or a vacant permanent position for which the disabled employee is qualified, it would be a reasonable accommodation to reassign the employee to that position. If the position was created as temporary job, the reassignment to that position need only be for the temporary period of the job. Therefore, if a light-duty job is a temporary job, reassignment to that job need only be for the temporary period of the job, and an employer need not convert a temporary job into a permanent job. However, if a light-duty job is a permanent job, the assignment to the job must be for the entire time the job exists.

Nguyen does not come forth with any evidence showing that his assignment to the light-duty picker was permanent or that IBP had permanently assigned employees to the picker position. Nor does Nguyen show any conflict with ADA policies for a large employer with a labor intensive work force to reserve certain light-duty positions for temporary assignment to injured employees while they recuperate. Indeed, it seems consistent with the ADA that an employer should not be discouraged from assigning injured employees to temporary light-duty positions during their recuperation by the risk that these temporary assignments will establish that the employer can reasonably accommodate an employee with a vacant, permanent assignment.

 "As with discrimination cases generally, the plaintiff at all times bears the ultimate burden of persuading the trier of fact that he has been the victim of illegal discrim-

ination based on his disability." *White,* 45 F.3d at 361 (citation omitted). Nguyen does not come forth with that evidence on which a reasonable jury could find that his disability was the determining factor in IBP's decision to fire him. As discussed above in detail, IBP fired Nguyen for fabricating excuses for missing a physical therapy appointment. This legitimate, non-discriminatory reason for terminating Nguyen is basically unassailed by the evidence of record. For all of these reasons, IBP is entitled to summary judgment on Nguyen's claim of discrimination under the ADA.

*Breach of Implied Contract*

 As stated earlier, Kansas law presumes employment to be at will in the absence of an express or implied contract to the contrary. Whether there exists an implied contract of employment depends on the mutual intent of the parties as shown by acts, circumstances and inferences reasonably deducible therefrom:

> Where it is alleged that an employment contract is one to be based upon the theory of "implied in fact," the understanding and intent of the parties is to be ascertained from several factors which include written and oral negotiations, the conduct of the parties from the commencement of the employment relationship, the usages of the business, the situation and objective of the parties giving rise to the relationship, the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to explain or make clear the intention of the parties at the time said employment commenced.

*Anglemyer v. Hamilton County Hosp.,* 58 F.3d 533, 537 (10th Cir.1995) (quoting *Morriss v. Coleman Co.,* 241 Kan. at 513, 738 P.2d 841 (quoting in turn *Allegri v. Providence–St. Margaret Health Center,* 9 Kan. App.2d 659, Syl. ¶ 5, 684 P.2d 1031 (1984))). An implied-in-fact contract depends on the mutual intent of both contracting parties, for the unilateral expectation of one party will not create a contract. *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1492 (10th Cir.1995). The intent of contracting parties

is typically an issue of fact reserved for the jury, and, thus, the existence of an implied contract of employment is necessarily a factual inquiry. *Arnold v. Air Midwest, Inc.,* 877 F.Supp. 1452, 1462 (D.Kan.1995); *Morriss,* 241 Kan. at 512, 738 P.2d 841. Because the question of the parties' intent is a factual inquiry resolved most often upon circumstantial evidence, an implied contract claim is rarely subject to summary judgment. *See Koopman v. Water Dist. No. 1 of Johnson County,* 972 F.2d at 1165; *Kastner v. Blue Cross & Blue Shield of Kansas, Inc.,* 21 Kan.App.2d 16, 23, 894 P.2d 909 (1995), *rev. denied,* 257 Kan. Adv. Sheet No. 3 p. VII (June 1995). Summary judgment is still appropriate when the alleged implied contract is based on only a unilateral expression in a personnel manual that has not been bargained for, *see Farthing v. City of Shawnee, Kan.,* 39 F.3d 1131, 1138–40 (10th Cir.1994); *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir.1988) *(per curiam )*; or when "the plaintiff presents only evidence of his own unilateral expectation of continued employment," *Conyers v. Safelite Glass Corp.,* 825 F.Supp. 974, 977 (D.Kan.1993) (citation omitted); *see Panis,* 60 F.3d at 1493; *Kastner v. Blue Cross & Blue Shield of Kansas, Inc.,* 21 Kan.App.2d at 23, 24, 894 P.2d 909 (An implied contract is not "established solely by the employee's subjective understanding or expectation about his or her employment.") (citation omitted).

Nguyen bases his implied contract claim on the following evidence: (1) the letter of March 10, 1993, informing Nguyen that he was obligated to attend physical therapy appointments and that blatant violations could result in being sent home, without pay, until the appointment was made up; (2) Brownrigg's testimony that every time he had fired an employee over the past three years he believed there was good reason and just cause for doing so; (3) Nguyen's averment that when hired he was told that he would not be fired as long as he worked hard and followed orders; and (4) Brownrigg's testimony that he told Nguyen on March 15, 1993, "the only way this is going to be resolved is if you bring in the bill. I said that is all I need. You bring in the bill, we will get you back to work," (Brownrigg Dep. at 52–53) and that Brownrigg told Nguyen on March 16, 1993, "that he could stay at home until he brought the bill in; and I would leave it on indefinite suspension until further notice," (Brownrigg Dep. at 53).

 None of this evidence shows any mutual intent that Nguyen would not be terminated if IBP believed he had fabricated an excuse for missing a physical therapy appointment. The letter of March 10, 1993, while addressing the employee's obligation to make medical appointments and consequences for missing them, does not speak to the circumstances when an employee tells the employer a fabricated excuse for missing the appointment. A reasonable factfinder could not read that letter as saying that an employee may make up a story for missing a medical appointment and, if caught in the lie, will be disciplined only for having missed the appointment. As for Brownrigg's testimony on his practice of firing for cause and Nguyen's averment regarding the statement made at orientation, neither suggests an agreement that Nguyen would not be terminated for lying to IBP. Finally, Brownrigg's statements that if Nguyen brought in the car repair bill he could return to work do not evidence any agreement that Nguyen would not be fired if Brownrigg concluded that Nguyen was lying. Brownrigg's final statement on March 16, 1993, was that Nguyen would be put on indefinite suspension until further notice. Nguyen received further notice on March 18, 1993, when Brownrigg terminated him for falsification after checking with every wrecker service in Emporia. Brownrigg never stated that Nguyen would be rehired after March 18, 1993, if he brought in the car repair bill.

 Even assuming there was an implied contract that Nguyen could not be fired for cause, the court believes the only reasonable conclusion from all the evidence is that IBP had cause for terminating Nguyen. Based on what Brownrigg knew at the time, he had adequate cause to fire Nguyen for lying to him. Thus, even if an implied contract for employment existed, Nguyen does not have a cause of action for breach of that contract.

IT IS THEREFORE ORDERED.