Carole **MILLER**, Plaintiff,

v.

**U.S. BANCORP et al., Defendants.**

**Civil No. 95–18–JO.**

United States District Court,
D. Oregon.

May 16, 1996.

_navigation

**995**

Benjamin Rosenthal, Portland, OR, for Plaintiff.

Jeffrey J. Druckman, Carole L. Souvenir, Sharon L. Toncray, Miller Nash Wiener Hager & Carlsen, Portland, OR, John P. Crowell, Portland, OR, for Defendants.

*OPINION AND ORDER*

ROBERT E. JONES, Judge:

Plaintiff Carole Miller brings this action against her former employers, defendants U.S. Bancorp, United States National Bank, U.S. Bancorp Mortgage Co. (together, "U.S. Bancorp"), and her former supervisor, defen-

dant Jeffrey Chambers, alleging violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12102 *et seq*, and supplemental state law claims for disability discrimination, intentional infliction of emotional distress. Defendant Chambers is named as a defendant only with respect to the emotional distress claim.[1]

The case is before me on U.S. Bancorp's motion for summary judgment (# 42). For the reasons set forth below, the motion is granted as to plaintiff's claims for disability discrimination under federal and state law (first and second claims) and denied as to plaintiff's supplemental claim for intentional infliction of emotional distress (third claim). Plaintiff's remaining supplemental claims are remanded to state court for all further proceedings.

## FACTUAL BACKGROUND

Plaintiff was employed by U.S. Bancorp, from October 1989, until February 1993.[2] From October 1989, until April 15, 1991, plaintiff was employed as a customer service representative.

In March 1990, plaintiff was injured in an automobile accident. Plaintiff alleges that because of head injuries she suffered in the accident, her short term memory, including her capacity to store and retrieve information, has been permanently impaired. Plaintiff further alleges that her short term memory loss is a "disability" within the meaning of the ADA. Complaint, ¶¶ 4 and 5.

On April 15, 1991, plaintiff transferred within U.S. Bancorp from her position as customer service representative to the post-closing mortgage department, where she became an Insuring Specialist II. According to the evidence submitted, the post-closing department was responsible for making sure that mortgage files were complete and accurate so that the loans could be sold on the secondary market.

---

1. In earlier proceedings in this case, the court granted summary judgment in favor of Chambers on plaintiff's claim for interference with economic relations.

2. Plaintiff was employed by the various defendant entities off and on from April 1978, to February 1993. Only events that occurred during her employment between October 1989, and February 1993, are at issue in this lawsuit.

Plaintiff's job involved assembling and checking loan files for proper documentation and accuracy. Evidently as a result of injuries she sustained in the automobile accident, plaintiff had difficulty performing her job duties. Eventually, plaintiff was placed on formal written counseling and, on March 19, 1992, plaintiff was placed on probation.

In March 1992, plaintiff informed U.S. Bancorp, through letters from her physician, Robert Mullen, M.D., and her psychologist, Gregg Reiter, Ph.D., of her disability. On April 1, 1992, based on the information provided by Dr. Mullen and Dr. Reiter, U.S. Bancorp suspended plaintiff's probation and gave her temporary duties that required less concentration than the insuring specialist job required.

In June 1992, Dr. Reiter wrote to Sally Ann Marson, a supervisor in the post-closing department, and explained that Miller's disability would be permanent. Dr. Reiter further stated that although Miller "could be expected to have some difficulty on tasks where she must learn new information," he believed that she could perform tasks that she had learned in the past. Affidavit of Benjamin Rosenthal ("Rosenthal Aff."), Ex. 10. Miller states that on Dr. Reiter's recommendation, she applied, unsuccessfully, for several vacant positions within U.S. Bancorp that would permit her to utilize her old skills.

Frustrated with her inability to transfer to a more suitable job, on January 4, 1993, Miller filed a grievance. On January 13, 1993, U.S. Bancorp again placed Miller on counseling, and on January 29, 1993, again placed her on probation. The evidence shows that Marson and Kim Smith, an employment relations officer, based their decision to place Miller on counseling on the belief that her difficulties at work were performance problems and were not due to her disability. Marson testified in deposition that during the January 13 counseling session, Miller asked, in essence, what she should do, and Marson told her to "go back and talk to your doctor." Rosenthal Aff, Ex. 11, at 7.

Miller consulted Dr. Mullen on January 27, 1993. Dr. Mullen's chart notes from that date state that "[Miller] may be permanently disabled for her usual occupation due to what may be nonreversible organic mental dysfunction." U.S. Bancorp's Memorandum in Support of Motion for Summary Judgment ("U.S. Bancorp Memo"), Ex. C. Two days later, on January 29, 1993, Dr. Mullen wrote to Miller, advising her to apply for a leave of absence from work. As pertinent, his letter states:

> Please share this letter with your employers or other individuals as needed.

> Per our office evaluation January 27, I recommend that you apply for leave of absence due to [your] disability. I am concerned that you may not be able to do the usual tasks of your occupation. I recommend you apply for disability through your employer and consider applying for disability through the State of Oregon as well.

U.S. Bancorp Memo, Ex. D.

Miller asserts that approximately the same time, Marson told her to either apply for benefits under U.S. Bancorp's disability plan or face termination. With Marson's assistance, Miller filled out a request for a medical leave of absence, to begin on February 2, 1993.

On February 4, 1993, Miller applied to the Social Security Administration for disability insurance benefits. On March 3, 1993, she applied for long term disability income plan benefits through U.S. Bancorp. On June 17, 1993, Miller received notice that she qualified for benefits under U.S. Bancorp's disability income plan beginning May 4, 1993.[3] On May 1, 1993, the Social Security Administration notified Miller that it had determined that she "became disabled on February 02, 1993,"[4] and that she was entitled to monthly

---

3. U.S. Bancorp's disability income plan incorporates a three month waiting period, during which time the employee must have been "totally disabled." Thus, the May 4, 1993, date reflects a finding that Miller was totally disabled as of February 4, 1993.

4. Evidently the Social Security Administration accepted Miller's application for benefits early in the administrative process, because her claim does not appear to have been submitted to an Administrative Law Judge for decision.

disability benefits beginning August 1993.[5] Miller continues to receive monthly disability benefits from these two sources.

## STANDARD

■ Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge,* 865 F.2d 1539, 1542 (9th Cir.1989).

■ The substantive law governing a claim determines whether a fact is material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *T.W. Elec. Service,* 809 F.2d at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. *Id.* at 630–31.

## DISCUSSION

U.S. Bancorp moves for summary judgment against Miller on all of her claims against the corporate defendants. With respect to her claim for intentional infliction of emotional distress, the court has already denied a similar motion by defendant Chambers, Miller's supervisor in the post-closing department, albeit reluctantly given the minimal facts supporting that claim. U.S. Bancorp's motion for summary judgment on that claim (third claim) is DENIED.

■ U.S. Bancorp's motion for summary judgment on Miller's disability discrimination claims under federal and state law presents an interesting issue of first impression in this court. In essence, U.S. Bancorp argues that because Miller is totally and permanently disabled, she cannot establish a prima facie case of disability discrimination under either the ADA or the state law equivalent.

■ The ADA prohibits a "covered entity," *i.e.,* an employer like U.S. Bancorp, from discriminating against "a qualified individual with a disability because of the disability of such individual * * *." 42 U.S.C. § 12112(a). To make out a prima facie case of disability discrimination under the ADA, Miller must establish that (1) she has a disability, (2) she is a qualified individual, *i.e.,* that with or without reasonable accommodation, she is capable of performing the essential functions of the job, and (3) she was terminated by reason of her disability. *See, e.g., Harden v. Delta Air Lines, Inc.,* 900 F.Supp. 493, 496 (S.D.Ga.1995).

Only the second element of Miller's prima facie case is at issue. The ADA defines "qualified individual with a disability" as

> an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8). Similarly, the Oregon state law equivalent, O.R.S. 659.425(1)(a), prohibits discrimination against disabled employees only if the employee's impairment "does not prevent the performance of the work involved."

U.S. Bancorp contends that Miller cannot establish that she is a "qualified individual with a disability" under federal law or that her impairment "does not prevent the perfor-

5. This determination reflects the Social Security Administration's requirement of a five month waiting period.

mance of the work involved" under state law because by her own admission and in the opinions of her physicians, she is permanently and totally disabled. In support of its argument, U.S. Bancorp offers numerous exhibits, some of which are summarized above. Of particular significance are the following:

1. In his January 29, 1993, letter to Miller recommending that she apply for a leave of absence, Dr. Mullen expressed concern that "you may not be able to do the usual tasks of your occupation," and recommended that Miller apply for disability benefits (U.S. Bancorp Memo, Ex. D).

2. To qualify for benefits under U.S. Bancorp's disability insurance policy, Miller had to be "totally disabled." The policy defined "total disability" as follows:

> During the first two years of your disability, you will be considered totally disabled if you are unable to perform the duties of the job you held when you became disabled or any comparable job within U.S. Bancorp. The first two years of your disability begin on the first day of absence because of total disability.
>
> After the initial two years, total disability means the continuous inability to engage in any gainful employment for which you are or may become qualified by education, training or experience, regardless of your former job.

U.S. Bancorp Memo, Ex. G, pp. 3–4.

In her application for U.S. Bancorp disability benefits, Miller stated that the last day she worked before becoming totally disabled was "2–1–93," the day before she began the leave of absence. The application includes Miller's certification that "the information provided is correct and true to the best of my knowledge." U.S. Bancorp Memo, Ex. E. Because Miller has continuously received benefits for more than two years, she is deemed to have an inability to engage in any gainful employment.

3. In her Social Security application, Miller described her condition as post-traumatic stress disorder/memory deficit disorder/attention deficit disorder/head trauma, concussion. She stated that her condition made her stop working on February 2, 1993, because:

> My condition is just continuing to get worse. I have lost all of my short term memory. Theres [sic] times when driving down a street that I go down every day sometimes I forget and have turned on 1 way roads going the wrong way.

The Social Security application asked: "Has your doctor told you to cut back or limit your activities in any way?" Miller responded "yes", "[t]o take a full disability." Miller signed the application immediately below the following certification:

> Knowing that anyone making a false statement or representation of a material fact for use in determining a right to payment under the Social Security Act commits a crime punishable under Federal law, I certify that the above statements are true.

U.S. Bancorp Reply Memo, Ex. P.

4. The Social Security Notice of Award states that "[w]e have determined that you became disabled on February 02, 1993," and that "[d]octors and other trained staff decided that you are disabled under our rules." U.S. Bancorp Memo, Ex. I. The Social Security regulations define "disability" as

> the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment * * *. To meet this definition, you must have a severe impairment, which makes you unable to do your previous work or any other substantial gainful activity which exists in the national economy.

20 C.F.R. § 1404(a).[6]

5. In a series of attending physician's statements provided to U.S. Bancorp's insurance carrier, Miller's physicians answered "never" or "probably never" to the question "When do you expect a fundamental or

---

**6.** As the court in *Nguyen v. IBP, Inc.*, 905 F.Supp. 1471 (D.Kan.1995), noted, "[t]he court is well aware that a person is not disabled under social security law unless 'his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience engage in any other kind of substantial gainful work which exists in the national economy * * *.' " *Nguyen*, 905 F.Supp. at 1484 n. 6 (quoting 42 U.S.C. § 423(d)(2)(A)).

marked change in patient's condition?" In the most recent physician's statement of record, dated August 22, 1994, Dr. Dunham remarked that Miller is "[u]nable to return to work. Is medically disabled." *See* U.S. Bancorp Memo, Exs. K, L, and M.

The evidence also establishes that plaintiff continues to collect disability benefits, both under U.S. Bancorp's policy and from Social Security. Notably, Miller has offered no evidence that her condition has changed. Instead, Miller argues that U.S. Bancorp forced her to apply for disability benefits, and that she could have continued to work if U.S. Bancorp had transferred her to the right kind of job. But Miller's assertion that she could have worked is flatly inconsistent with her application for and acceptance of benefits based upon total disability.

Many federal courts facing similar arguments have refused to permit a plaintiff to "speak out of both sides" of his or her mouth, finding that the certifications of total disability constitute binding admissions to the effect that the plaintiff cannot perform the essential functions of the job. *Reigel v. Kaiser Foundation Health Plan of N.C.*, 859 F.Supp. 963, 967–70 (E.D.N.C.1994); *see, e.g., August v. Offices Unlimited, Inc.*, 981 F.2d 576 (1st Cir.1992) (plaintiff's statements made for the purposes of obtaining disability benefits were binding admissions by plaintiff to the effect that he could not perform the essential functions and duties of his job); *Harden v. Delta Air Lines, Inc.*, 900 F.Supp. at 497 ("This Court * * * [finds] it 'incredible' that a plaintiff would claim that he was discriminated against by his employer for failing to make reasonable accommodations while representing to various entities that he was unable to work"); *Reigel*, 859 F.Supp. at 967–70 (plaintiff, a physician with a shoulder injury, who had certified her total disability to obtain disability insurance benefits, could not demonstrate that she was qualified to perform

the essential functions of the job); *see also Nguyen v. IBP, Inc.*, 905 F.Supp. 1471, 1484–86 (D.Kan.1995) and the numerous decisions cited in the opinion.

I find these authorities persuasive. The federal district courts are not entirely in accord on this issue, however, and there is some contrary authority, notably *Overton v. Reilly*, 977 F.2d 1190 (7th Cir.1992), where the court declined to find an award of social security benefits to be binding on the issue of ability to work. But in *Overton*, the plaintiff was awarded social security benefits on a finding that he met the criteria for a listed disability and, thus, the Social Security Administration had not evaluated whether he could perform work in the national economy.[7] In fact, the plaintiff was employed at the time the disability determination was made. *See Overton*, 977 F.2d at 1192, 1196.[8]

Similarly, in *Smith v. Dovenmuehle Mortg., Inc.*, 859 F.Supp. 1138 (N.D.Ill.1994), the plaintiff was awarded social security disability benefits on the basis that he was infected with the HIV virus and had developed full-blown AIDS, a listed impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.00. In concluding that the social security award was not "synonymous with a determination that plaintiff is not a 'qualified individual' under the ADA," the court also noted the fact that the plaintiff had found other work and was working full time. 859 F.Supp. at 1141. Significantly, the court was careful to distinguish the facts before it from the facts of two other cases that had reached opposite conclusions, commenting:

> [T]he cases relied upon by defendant * * * are inapposite. In both those cases, the plaintiffs first argued to the SSA that they were disabled and unable to perform their jobs in order to obtain social security disability payments. They then turned around and argued to the court that they were entitled to back pay and reinstate-

---

7. *See* 20 C.F.R. § 1520(d). When a claimant's impairments meet or equal a listed impairment, the claimant will be found to be disabled without consideration of age, education, and work experience.

8. Similar facts distinguish the present case from *Heise v. Genuine Parts Co.*, 900 F.Supp. 1137,

1152 (D.Minn.1995), also relied on by Miller. In *Heise*, the evidence showed that after the plaintiff was placed on disability leave and after he began receiving social security benefits, his condition improved sufficiently to perform the essential functions of the job. There is no similar evidence in this case.

ment to those very same jobs because they were not, and had never been, disabled. As both * * * courts recognized, to deny summary judgment in those circumstances would be 'to countenance the very intentional self-contradiction and abuse of the courts which judicial estoppel was designed to prevent.' "

*Smith,* 859 F.Supp. at 1142, citing *Brown v. National R.R. Passenger Corp.,* 1990 W.L. 119558 (N.D.Ill. Aug. 14, 1980), and *Muellner v. Mars, Inc.,* 714 F.Supp. 351 (N.D.Ill.1989).

The situation in this case is markedly similar to the situation distinguished by the court in *Smith.* Miller has not worked, nor is there any. evidence that she has even been capable of working, since she left U.S. Bancorp and sought disability benefits. Moreover, there is no evidence that Miller is receiving social security benefits on any basis other than a finding that she is, as she represented, totally and permanently disabled from performing any work in the national economy. In particular, there is no evidence whatsoever that the Social Security Administration determined that her impairment met or equaled a listed impairment. *See* footnote 7.

I conclude, as did the court in *Reigel,* that "[p]laintiff in the case *sub judice* cannot speak out of both sides of her mouth with equal vigor and credibility." 859 F.Supp. at 970. Indeed, in evaluating the evidence before me, I echo the concerns expressed in a footnote by the district court in *Reigel:*

> In analyzing and weighing these statements [certifying that the plaintiff was totally disabled], the court is assured that plaintiff, her physicians and attorneys accurately and truthfully completed these forms which served as the basis for plaintiff's receipt of disability benefits from various entities, including the Federal Government. In fact, any attempt by plaintiff to rebut the accuracy or veracity of these statements may serve as a foundation for the instigation of an insurance fraud investigation.

859 F.Supp. at 969 n. 7.

Miller cannot have it both ways. In light of the evidence submitted, I find that Miller has failed to demonstrate that she was quali-

fied to perform the essential functions of her job, a necessary element of her prima facie case. Accordingly, U.S. Bancorp's motion for summary judgment on Miller's disability discrimination claims (first and second claims) is GRANTED.

### CONCLUSION

Defendants' motion for summary judgment (# 42) is GRANTED IN PART and DENIED IN PART in accordance with this opinion. The case is REMANDED to state court for all further proceedings. Any other pending motions are denied as moot.