**Barbara J. CLINE, Plaintiff,**

v.

**WESTERN HORSEMAN, INC.,
a Colorado Corporation,
Defendant.**

**Civil Action No. 94–D–1624.**

United States District Court,
D. Colorado.

April 19, 1996.

**444**

L. Dan Rector, Norton Frickey & Associates of Colorado Springs, P.C., Colorado Springs, CO, for plaintiff.

Sheldon E. Friedman, McKenna & Cuneo, Denver, CO, for defendant.

## MEMORANDUM OPINION & ORDER

DANIEL, District Judge.

### I. *INTRODUCTION*

This matter is before the court on defendant's Motion for Summary Judgment, filed February 21, 1996, wherein defendant argues that it is entitled to judgment as a matter of law since plaintiff is not a "qualified individual with a disability" as defined by the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111(8). Having reviewed the briefs submitted by both parties and considered the pertinent legal authorities, I believe defendant's motion should be granted for the reasons discussed herein.

### II. *STANDARDS FOR SUMMARY JUDGMENT*

■ Granting summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1534 (10th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 81, 126 L.Ed.2d 49 (1993). A genuine issue of material fact exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Merrick v. Northern Natural Gas Co.,* 911 F.2d 426, 429 (10th Cir.1990). Only disputes over facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Fostvedt v. U.S., I.R.S.*,

824 F.Supp. 978, 982 (D.Colo.1993), *aff'd,* 16 F.3d 416, 1994 WL 7109 (1994).

■ In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Concrete Works v. City and County of Denver*, 823 F.Supp. 821, 828 (D.Colo. 1993), *rev'd on other grounds*, 36 F.3d 1513 (10th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1315, 131 L.Ed.2d 196 (1995). In so doing, all doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir.1991).

■ When moving for summary judgment, the moving party has the initial burden. The movant need not show an absence of issues of material fact in order to be awarded summary judgment, nor must it negate the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rather, it must only allege an absence of evidence to support the opposing party's case and identify supporting portions of the record. *Id.* Once the movant has carried its initial burden, the burden of going forward shifts to the opposing party. The nonmovant must establish that there are issues of material fact to be determined. *Id.* at 322–23, 106 S.Ct. at 2552. The nonmovant must go beyond the pleadings and identify specific facts showing genuine issues for trial on every element challenged by the motion. *Tillett v. Lujan*, 931 F.2d 636, 639 (10th Cir.1991). Conclusory allegations do not establish issues of fact sufficient to defeat summary judgment. *McVay v. Western Plains Service Corp.*, 823 F.2d 1395, 1398 (10th Cir.1987).

### III. *FACTS*

Viewing the evidence in the light most favorable to plaintiff, Barbara Cline, I take the following as true for purposes of evaluating defendant's instant motion. Cline began working for defendant Western Horseman, a magazine publisher, in 1985 as a clerk in defendant's accounting department. Her essential job duties consisted of general secretarial work as well as computer data entry.

In early 1992, Cline began experiencing physical discomfort in her hands and arms which affected her ability to work. On April 10, 1992, after experiencing pain in her right elbow, hand, and arm, plaintiff visited her family doctor who advised that she should report her condition to her employer and be examined by a workers' compensation doctor. She did and her supervisor at Western Horseman, Herb Brown, scheduled an appointment with Dr. Robert Pero, M.D., who determined that she had a work-related injury. As part of her treatment, a comprehensive work-site evaluation was completed in May 1992 by the Institute for Hand Rehabilitation. The evaluation contained numerous suggestions regarding worksite accommodations that, if implemented, might alleviate plaintiff's medical problems. Plaintiff contends, and I accept as true, that defendant implemented only a few of the litany of suggestions.

On May 14, 1992, Cline returned to Dr. Pero for a scheduled examination. Dr. Pero concluded that plaintiff was not responding to physical therapy and thus placed her on a half day work regimen with continued therapy. Accordingly, Western Horseman placed Cline on a half-day work schedule during May and June 1992, which was subsequently increased to six hours in July 1992 in an effort to prepare Cline for the magazine's busy fall season. The record indicates that while working this reduced schedule, Cline received workers' compensation benefits—classified as Temporary Partial Disability ("TPD")—and accrued holiday and vacation time based on an eight hour work day.

The catalyst for the instant controversy occurred on August 13, 1992, when Cline visited Dr. Lester Cramer, M.D., for a scheduled appointment. Dr. Cramer issued a "Disability Certificate" which stated that Cline was "under [his] professional care and was totally incapacitated from 8/13/92 to 8/20/92." Cline returned to the office and either gave the certificate to Mr. Barton or simply placed it on his desk. In any event, as instructed by Dr. Cramer, she did not

return to work the next day, Friday, August 14, 1992. On Monday, August 17, 1992, Mr. Barton sent plaintiff a letter terminating her employment. The letter stated, in pertinent part:

> I was very sorry to learn that your doctor has deemed you to be totally incapacitated, and I know the rest of the office shares my concern for you. Once you get well, please feel free to reapply for another position here at Western Horseman. In the meantime, we will have to hire another person to fill your job. Enclosed is your last paycheck which includes severance pay and vacation.[1]

As a result of the above referenced actions, plaintiff commenced this action. Her complaint asserts two claims for relief, of which only the first—violation of the ADA—is based on federal law. The other claim is a state law claim for wrongful discharge over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). Concerning her ADA claim, Cline contends that Western Horseman failed to reasonably accommodate her disability and thus violated the ADA.

Of significance, and discussed in further detail below, since her termination Cline has collected long term disability benefits from three sources: (1) state workers' compensation law; (2) UNUM, which is Western Horseman's supplemental disability carrier; and (3) the Social Security Administration. Because of this, defendant argues that Cline is not a "qualified individual with a disability" and thus is precluded from asserting an ADA claim as a matter of law. I agree.

## IV. DISCUSSION

### A. General Elements of an ADA Claim

In order to state a prima facie case of disability discrimination under the ADA, a plaintiff must establish three things: (1) that she is a disabled person within the meaning of the ADA; (2) that she is qualified, that is, with or without reasonable accommodation (which she must describe), she is able to

---

1. Though defendant argues that Cline quit or resigned and that the letter merely acknowledges her voluntary withdrawal, for purposes of summary judgment I accept plaintiff's contention that Western Horseman terminated her on account of her disability.

perform the essential functions of the job; and (3) that the employer terminated her because of her disability. *White v. York Int'l Corp.*, 45 F.3d 357, 360–61 (10th Cir.1995).

■■■■ Here, my focus is limited to the second element: whether Cline could perform her job with reasonable accommodation. For purposes of this motion, the record supports that plaintiff was disabled and terminated on account of her disability. Thus, the sole question for me to answer is whether there exists a genuine issue of material fact as to whether Cline would have been able to perform her job had Western Horseman reasonably accommodated her disability. *See August v. Offices Unlimited, Inc.*, 981 F.2d 576, 580 (1st Cir.1992) ("[W]e must decide whether or not there was at least a genuine issue of material fact that, if OUI made reasonable accommodation to August's handicap, he would have been able to perform his job."). This inquiry reflects that the ADA

> was designed to prohibit discrimination within the ambit of an employment relationship in which the employee is potentially able to do the job in question. Though it may seem undesirable to discriminate against a handicapped employee who is no longer able to do his or her job, this sort of discrimination is simply not within the protection of [the ADA].

*Beauford v. Father Flanagan's Boys' Home*, 831 F.2d 768, 771 (8th Cir.1987) (construing analogous section of the Rehabilitation Act), *cert. denied*, 485 U.S. 938, 108 S.Ct. 1116, 99 L.Ed.2d 277 (1988);[2] *cf. Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979) ("An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his hardship.").

**B.** *Cline is not a "Qualified Individual with a Disability" under the ADA*

■■■■ In addressing this issue, defendant argues that since Cline has received numerous disability benefits from the day of her termination—which require that she affirm

and be judged "totally disabled"—Cline, by definition, is not a "qualified individual with a disability" under the ADA. At its core, this argument reflects that it is logically impossible for an individual to be sufficiently "disabled" to qualify for long term disability benefits yet nonetheless be capable of "perform[ing] the essential functions of the employment position that such individual holds." 42 U.S.C. § 12111(8). Simply stated, these two statuses are incompatible.

In this instance, and as highlighted above, Cline has received long term disability benefits from three sources, the most significant of which is her federal SSA benefits. To receive SSA benefits, one has to be declared "disabled" by the Social Security Administration as defined by Congress and Agency regulations. Specifically, under the Social Security Act, "disability" is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The underlying regulations state that "[t]o meet this definition, you must have a severe impairment, which makes you unable to do your previous work or any other substantial gainful activity which exists in the national economy." 20 C.F.R. § 404.1505 (1995).

Here, in his Decision awarding Cline SSA benefits, the Administrative Law Judge found that Cline "has been disabled since August 13, 1992." The Decision continues, in relevant part:

> The claimant has the following impairments which are considered to be "severe" under the Social Security Act and Regulations: bilateral cervicobrachial syndrome, cumulative stress disorder of the upper extremities with lateral epicondylitis, cubital tunnel syndrome, carpal tunnel syndrome, radial tunnel syndrome, thoracic outlet syndrome, and rotator cuff patholo-

---

**2.** Note, because the ADA expressly requires that its provisions be interpreted in a manner that "prevents imposition of inconsistent or conflicting standards" between the Rehabilitation Act and the ADA, 42 U.S.C. § 12117(b), case law developed under the Rehabilitation Act is instructive in deciding cases under the ADA. *See White*, 45 F.3d at 360 n. 5.

gy. These impairments prevent the claimant from manipulating or performing repetitive motion with the hands, arms, or elbows, handling anything, pushing or pulling, grasping, pinching, working with the arms overhead, lifting more than 10 pounds with either upper extremity, or turning the head frequently.

. . . .

The claimant has a history of problems with the upper extremities, for which she has sought medical treatment from many sources over several years. Richard A. Bell, M.D., stated that, "In summary at this time, I think that we are dealing with a rather extensive problem of nerve irritation at multiple levels."

. . . .

Based on the totality of the medical evidence and the limitations imposed on her activities by the physicians who have evaluated the claimant's condition, the Administrative Law Judge finds that the claimant is unable to perform even the full range of sedentary work, as set forth above.

*The claimant's description of her limitations is consistent with the record when considered in its entirety.* The claimant cannot perform her past relevant work and does not have transferable skills to perform other work within her residual functional capacity.

Emphasis Added. Thus, I find, as a matter of law, that Cline cannot be "disabled" as defined by the Social Security Act yet still be able to perform the essential functions of her job at Western Horseman if provided with reasonable accommodations.

This conclusion is bolstered by the fact that Cline received other long term disability benefits—i.e., workers' compensation and private supplemental disability insurance—wherein she had to make similar representations regarding her inability to perform any work.[3] Similarly, Cline's 1992, 1993, and 1994 tax returns state that she is "disabled" or "total[ly] disabled." Also, the most comprehensive medical report contained in the

record, written by Jeffrey Jenks, M.D., states that "I do not feel that she should be doing anything more than sedentary work with no repetitive use of her right upper extremity. These would be on a permanent basis." Thus, based on this evidence, even assuming Western Horseman had provided Cline with reasonable accommodations for her disability, she would nonetheless have been unable to perform the essential functions of her job. That is, she is not a "qualified individual with a disability" and thus cannot maintain an ADA claim.

### C. *What Other Courts have Said*

In support of this conclusion, I note that the estoppel "argument is a persuasive one, and it has convinced a number of courts to decide in [d]efendant's favor." *Reiff v. Interim Personnel, Inc.*, 906 F.Supp. 1280, 1289 (D.Minn.1995) (reviewing case law and concluding that substantial weight of authority favors summary judgment disposal when plaintiff has received disability benefits); *see also Nguyen v. IBP, Inc.*, 905 F.Supp. 1471, 1484 (D.Kan.1995) ("Federal courts facing similar situations have ruled as a matter of law that the plaintiff was not a 'qualified individual with a disability.'"). As the *Reiff* court stated, "[h]aving collected substantial benefits, based on these unambiguous and seemingly informed representations, plaintiff is estopped from now claiming that she could perform the essential functions of her position." *Reiff*, 906 F.Supp. at 1289. *Cf. Reigel v. Kaiser Found. Health Plan of North Carolina*, 859 F.Supp. 963, 970 (E.D.N.C.1994) ("Plaintiff in the case *sub judice* cannot speak out of both sides of her mouth with equal vigor and credibility before this court.").

Similarly, though defendant here claims that the Tenth Circuit Court of Appeals has not passed judgment on this issue, and my independent research efforts verify this, my colleagues in the state of Kansas have considered this issue on several occasions. For

---

**3.** Specifically, the record indicates that Cline received temporary total disability benefits ("TTD") from August 17, 1992 through September 6, 1995 and has been awarded permanent partial

disability benefits ("PPD") from September 8, 1995 through June 22, 1996. *See* Colo.Rev.Stat. § 8–42–101, *et seq.*

instance, in *Nguyen,* the court was presented with facts similar to those now before me:

It is uncontroverted that Nguyen claimed and certified in the social security proceedings that · he was disabled as of March 13, 1993, and testified therein that he could not perform the duties of his former work. Based on his representations and testimony and the medical evidence, he was awarded social security benefits. It is impossible for Nguyen to have been both disabled under social security law and able to perform the essential functions of his work under the ADA.

. . . .

Even if the court were not to use this doctrine of judicial estoppel, the court believes that the proceedings before the ALJ, as reflected in his written order, including Nguyen's sworn testimony, Nguyen's medical records, and the vocational expert's testimony is such compelling evidence that a reasonable jury could not find that Nguyen could perform the essential functions of his work.

*Nguyen,* 905 F.Supp. at 1485. *See also Smith v. Midland Brake, Inc.,* 911 F.Supp. 1351, 1357 (D.Kan.1995) ("This court has consistently held that where an employee has alleged that he is totally disabled in order to receive disability benefits, he is estopped from claiming that he can perform the essential functions of a job under the ADA."); *Lamury v. Boeing Co.,* 1995 WL 643835 (D.Kan.Oct. 5, 1995) (elements of estoppel present where employee previously obtained workers' compensation on the grounds that she was unable to perform her job); *Ricks v. Xerox Corp.,* 877 F.Supp. 1468 (D.Kan.1995) (absent evidence that he misrepresented his condition in pursuit of long term disability benefits, plaintiff was arguably estopped from claiming that he was a qualified individual under the ADA); *Garcia–Paz v. Swift Textiles, Inc.,* 873 F.Supp. 547 (D.Kan.1995)

(plaintiff who represented that she was disabled in order to receive social security and long term disability benefits estopped from claiming that she was a qualified individual under the ADA); *Peoples v. City of Salina, Kansas,* 1990 WL 47436 (D.Kan.Mar. 20, 1990) (under Rehabilitation Act, plaintiff who contended that he was completely disabled in order to receive disability retirement benefits estopped from later claiming that he was qualified for his job).

Of the appellate courts that have considered this issue, both the First Circuit and Eighth Circuit Courts of Appeal have affirmed summary judgment in analogous contexts. *August v. Offices Unlimited, Inc.,* 981 F.2d 576, 581 (1st Cir.1992) (interpreting analogous state statute); *Beauford v. Father Flanagan's Boys' Home,* 831 F.2d 768, 770 (8th Cir.1987) (under Rehabilitation Act, held that employee who "had applied for various disability and health benefits" was not capable of performing essential functions of job); *but see Overton v. Reilly,* 977 F.2d 1190, 1196 (7th Cir.1992) (holding that a finding of disability by the Social Security Administration cannot be construed as a judgment that the plaintiff is unable to perform his job).[4] Accordingly, both the record presented in this case as well as precedent dictate the conclusion that Cline is not a "qualified individual with a disability" as defined by the ADA. Thus, her ADA claim fails.

Based on the foregoing factors, I conclude that: (1) plaintiff is estopped from claiming that she is a "qualified individual with a disability" since she has been receiving long term disability benefits since her date of termination; and (2) in any event, based on this record—i.e., Cline's representations, doctor's reports, and receipt of disability benefits—there is no genuine issue of fact as to whether Cline could perform the essential functions of her job with reasonable accommodation. Therefore, as either a matter of

4. Though plaintiff cites *Hogue v. MQS Inspection, Inc.,* 875 F.Supp. 714 (D.Colo.1995), in an effort to avoid summary judgment, that case is inapposite. In *Hogue,* the relevant question was "whether there were reasonable accommodations MQS could have provided for Hogue without undue hardship," which Judge Babcock deemed to be a fact specific inquiry not suited for summary judgment. *Id.* at 722. In contrast, here the relevant inquiry is whether Cline could have performed her essential job functions even with reasonable accommodations; furthermore, *Hogue* did not involve the instance where the plaintiff had been receiving long term disability benefits.

**449**

law—estoppel—or a matter of fact, Cline's ADA claim must fail.

### D. *Cline's State Based Wrongful Termination Claim Fails*

Cline's second claim for relief—wrongful termination under Colorado law—is deficient as both a matter of law and fact. She offers no evidence in support thereof, and, more importantly, Colorado does not appear to recognize such a tort under facts such as those now presented. *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708, 711 (Colo.1987) ("An employee who. is hired in Colorado for an indefinite period of time is an 'at will employee,' whose employment may be terminated by either party without cause and without notice, and whose termination does not give rise to a cause of action."); *Schur v. Storage Technology Corp.,* 878 P.2d 51, 54 (Colo.App.1994) ("[I]n a case in which the evidence establishes that there was no definite term of employment agreed upon by the parties, any claim of improper discharge made by the employee must be dismissed."). Furthermore, in her Response to defendant's Motion for Summary Judgment, Cline fails to make any argument in support of her wrongful termination claim. Finally, at the parties' Final Trial Preparation Conference, counsel for Cline voluntarily withdrew her claim for wrongful discharge.

### V. *CONCLUSION*

For the reasons discussed above, defendant's Motion for Summary Judgment is hereby GRANTED. Accordingly, it is hereby ORDERED that this action is DISMISSED, and the trial set to commence April 29, 1996 is VACATED as moot.