Polly HINDMAN, Plaintiff,

v.

GREENVILLE HOSP. SYS., and Greenville Memorial Hosp., Defendants.

C/A No. 6:95–2942–21.

United States District Court, D. South Carolina, Greenville Division.

Nov. 20, 1996.

Kathryne Ann Shelton, Columbia, SC, for plaintiff.

Thomas Allen Bright, Greenville, SC, for defendants.

### ORDER

TRAXLER, District Judge.

Plaintiff Polly Hindman ("Hindman") instituted this suit pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), *see* 42 U.S.C.A. §§ 2000e–2000e–17 (West 1994), the Americans with Disabilities Act ("ADA"), *see* 42 U.S.C.A. §§ 12101–12213 (West 1995), and the common law of South Carolina against Defendants Greenville Hospital Systems and Greenville Memorial Hospital (collectively, "Defendants"). In her first claim, brought under Title VII and the ADA, Hindman posits that the Defendants discharged her in retaliation for filing an administrative complaint with the South Carolina Human Affairs Commission ("SCHAC") and the Equal Employment Opportunity Commission ("EEOC"). In her second claim, brought under the ADA, Hindman contends that the Defendants discriminated against her on the basis of her disability and failed to accommodate her disability. Hindman's final claim is one for breach of the implied covenant of good faith and fair dealing based on South Carolina law. Asserting that they are entitled to judgment as a matter of law, the Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). Concluding that the doctrine of judicial estoppel precludes Hindman from establishing a prima facie case respecting her two federal claims and that her state-law claim is not cognizable under South Carolina law, the court grants the Defendants' motion.

### I.

The material facts are not disputed. Hindman commenced working for the Defendants in March 1992, and virtually from the inception of her employment, she complained about her work environment. Initially a technician in the Coronary Vascular Intensive Care Unit, Hindman successfully requested a transfer to Patient Accounts, where she commenced working in January 1993. Dissatisfied at Patient Accounts, however, Hindman again successfully requested a transfer to Facilities Development, where she commenced working in May 1993. Facilities Development fared no better than Hindman's prior positions because Hindman again expressed dissatisfaction with her work. Specifically, Hindman posited that she was sexually harassed at Facilities Development; but the complaints she lodged with personnel management centered exclusively on work-related issues, namely that she was not properly trained to operate the computer or filing systems. Yet again accommodating Hindman, the Defendants, at Hindman's request, transferred her to Social Services, where Hindman's recurrent depression precluded her from performing her work; consequently, she took a leave of absence on July 11, 1994, and eventually the Defendants terminated Hindman on August 4, 1994. Thus, in a fifteen-month period, Hindman transferred positions four times.

From 1987–1992, Hindman was treated at the Mountain View Family Practice Clinic for depression that exhibited physical manifestations. According to Hindman, her physical manifestations subsided until she commenced working in Facilities Development, when they recurred. Indeed, as of February 4, 1994, Hindman's depression was so profound that her physician pronounced her incapable of performing her duties. This incapacity prompted the Defendants to grant Hindman medical leave and transfer her to Social Services. Despite this medical leave and fourth transfer, Hindman's depression did not abate.

Subsequent to her transfer to Social Services, Hindman sought treatment at the Bay Laurel Center for Psychiatry and Psychotherapy, where she was treated by Dr. Peter

Owens ("Owens"), a psychiatrist, and Elaine Smith ("Smith"), a clinical social worker. Owens and Smith concluded that Hindman suffered from post-traumatic stress disorder and severe depression, opining that she was unable to work as of July 1994. Subsequent to her termination by the Defendants on August 4, 1994, Hindman applied for disability benefits from the Social Security Administration ("SSA"), asserting that she was disabled and unable to perform her job duties. In connection with her application for disability benefits, Hindman proffered the opinions of Owens and Smith, both of whom stated under oath, that Hindman was totally disabled as of July 1994, thereby rendering her unable to work. In addition, Hindman, also under oath, represented to the SSA that she was disabled and hence precluded from performing her duties. Presented with this substantial evidence conclusively demonstrating that Hindman was disabled and unable to work, on April 26, 1996, the SSA awarded her disability benefits retroactive to July 11, 1994. In subsequent applications for continuing disability benefits, again Hindman, and her health care professionals, represented under oath to the SSA that Hindman was disabled and unable to work.

Unhappy with her termination by the Defendants, Hindman filed administrative complaints with the SCHAC and EEOC in December 1994 and amended complaints in May 1995, asserting that the Defendants discriminated against her on the basis of her disability and in retaliation for filing the administrative complaints. These agencies found no basis of discrimination and issued a right-to-sue letter. Consequently, Hindman instituted this suit in state court, but the Defendants removed the case to federal district court on the basis of a federal question. Although asserting six claims in her amended complaint, three claims were dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), leaving for resolution the three claims addressed here. Based on Title VII and the ADA, Hindman's first claim is one of retaliation. According to Hindman, the Defendants discriminated against her on the basis of her disability and terminated her in retaliation for filing the administrative complaints with the SCHAC and EEOC. In her second claim, Hindman alleges that the Defendants violated the ADA by failing to accommodate her disability. This claim is premised on the assertions that the Defendants refused to review available positions with her at the time of her discharge and failed to make other accommodations that would permit her to return to work. Hindman's third claim is one of breach of the implied covenant of good faith and fair dealing. The gravamen of this claim is that Hindman was terminated, despite the fact that the Defendants allegedly informed her that she was a valued employee. The Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) with respect to all claims.

## II.

Federal Rule of Civil Procedure 56(c) squarely places on Hindman the burden to proffer competent evidence of each element of her claim following the Defendants' well-supported motion for summary judgment. The language of Rule 56(c) is compulsory, mandating that the district court enter judgment against Hindman if, "after adequate time for discovery ... [she] fails to make a showing sufficient to establish the existence of an element essential [to her] case, and on which [she] will bear the burden of proof at trial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). To prevail on their motion for summary judgment, Defendants must demonstrate that: (1) there is no genuine issue with respect to any material fact; and (2) they are entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact has been raised, the court must construe all reasonable inferences in favor of Hindman. *See id.* at 255, 106 S.Ct. at 2513–14. If, however, the evidence is so one-sided as a matter of law that one party must prevail, the court must grant summary judgment in favor of that party. *See id.* at 252, 106 S.Ct. at 2512. Because the onus is on Hindman to advance competent evidence establishing each element of her claim, she "cannot create a genuine issue of material fact through mere spec-

ulation or the building of one inference upon another," *see Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). Expounding on this precept, the *Anderson* Court explained that "[t]he mere existence of a scintilla of evidence in support of [Hindman's] position will be insufficient; there must be evidence on which the jury could reasonably find for [her]." *See Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. Thus, "[m]ere unsupported speculation ... is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Business & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir.1995). To defeat Defendants' motion for summary judgment, therefore, Hindman must demonstrate that specific, material facts exist that give rise to a genuine issue. *See Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553.

Summary judgment is not "a disfavored procedural short shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases," *id.* at 327, 106 S.Ct. at 2555, and to this end, "[s]ummary judgment serves the useful purpose of disposing of meretricious, pretended claims before the court and parties become 'entrenched in a frivolous and costly trial,' " *Myrtle Beach Pipeline Corp. v. Emerson Elec. Co.,* 843 F.Supp. 1027, 1035 (D.S.C. 1993) (quoting *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987)), *aff'd,* 46 F.3d 1125 (4th Cir.1995) (unpublished) (per curiam) (affirming summarily the reasoning of the district court). Principles of summary judgment are well-suited to discrimination claims, particularly if, as here, the plaintiff fails to proffer competent evidence to establish an element of his prima facie case. *See, e.g., Ennis,* 53 F.3d at 59–62 (affirming a grant of summary judgment regarding an ADA claim because the plaintiff failed to establish a prima facie case and noting that such claims, even if merit-less, are onerous for employers); *Myers v. Hose,* 50 F.3d 278, 281–83 (4th Cir.1995) (upholding a grant of summary judgment regarding an ADA claim for failure to prove a prima facie case and explaining the dire consequences to the employer and the public were the litigation permitted to proceed); *Tyndall v. National Educ. Ctrs., Inc.,* 31 F.3d 209, 213–15 (4th Cir.1994) (sustaining a grant of summary judgment in favor of an employer because the plaintiff could not establish the elements of her ADA claim and explaining the frivolous nature of her suit); *see also EEOC v. Clay Printing Co.,* 955 F.2d 936, 941–46 (4th Cir.1992) (affirming a grant of summary judgment in an ADEA suit because the plaintiffs failed to prove a prima facie case of discrimination and explaining that the federal courts may not immerse themselves in directing a corporation's business practices). Guided by this procedural standard, the court examines Hindman's claims.

### A.

Hindman's first claim is one of retaliatory discharge in violation of the ADA and Title VII. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual [regarding employment]." 42 U.S.C.A. § 12112(a) (West 1995). To establish a prima facie case of retaliatory discharge, Hindman must prove that:

(1) she was in the protected class; (2) she was discharged; (3) at the time of the discharge, she was performing her job at a level that met [Defendants'] legitimate expectations; and (4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination.*

---

* The proof schemes for federal anti-discrimination statutes are virtually identical and interchangeably applied. *See Antol v. Perry,* 82 F.3d 1291, 1299 (3d Cir.1996); *White v. York Int'l Corp.,* 45 F.3d 357, 360 n. 5 (10th Cir.1995); *Ennis,* 53 F.3d at 57. Thus, proceedings under the ADA, Title VII, the Age Discrimination in Employment Act ("ADEA"), and the Rehabilitation Act ("RA") are all analyzed in a similar fashion. The proof scheme, therefore, for proceeding under either the ADA or Title VII, as here, is the same. *See*

*Ennis,* 53 F.3d at 57–58 (adopting the proof scheme under Title VII articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for use in ADA discharge claims). *Compare Carter v. Ball,* 33 F.3d 450, 460 (4th Cir.1994) (holding that similar elements are necessary to establish a prima facie case of retaliatory discharge pursuant to Title VII: (1) plaintiff engaged in protected activity; (2) the defendant took employment action adverse to the plaintiff; and (3) a causal connec-

See Ennis, 53 F.3d at 58. The burden of establishing a prima facie case rests with Hindman, and if she fails to establish every element of her claim, summary judgment in favor of the Defendants is proper. See Tyndall, 31 F.3d at 212 (sustaining a grant of summary judgment in favor of a defendant-employer regarding an ADA claim because the plaintiff-employee could not prove that she was qualified for her position). If, however, Hindman succeeds in establishing a prima facie case, the burden shifts to the Defendants to articulate a legitimate, nondiscriminatory reason for the discharge that supports a finding that unlawful discrimination did not cause the challenged action. See Ennis, 53 F.3d at 58. Provided the Defendants satisfy this burden, "the McDonnell Douglas paradigm of presumption created by establishing a prima facie case 'drops from the case,' and 'the factual inquiry proceeds to a new level of specificity,'" see Jiminez v. Mary Washington College, 57 F.3d 369, 377 (4th Cir.) (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 n. 10, 255, 101 S.Ct. 1089, 1095 n. 10, 1094–95, 67 L.Ed.2d 207 (1981)), cert. denied, —— U.S. ——, 116 S.Ct. 380, 133 L.Ed.2d 304 (1995), which requires that Hindman shoulder "the ultimate burden of persuading the court that [she] has been the victim of intentional discrimination," see Burdine, 450 U.S. at 256, 101 S.Ct. at 1095. The ultimate issue in this suit is whether the Defendants intentionally, unlawfully discriminated against Hindman because of an alleged disability, and the burden of this proof rests with Hindman. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515–16, 113 S.Ct. 2742, 2751–52, 125 L.Ed.2d 407 (1993). Here, the parties do not dispute that Hindman was within the protected class nor that she was discharged; therefore, the court will examine the two remaining elements of the prima facie case.

### 1.

■ Hindman must prove that her work performance met her employer's legitimate expectations. To sustain this element, Hind-

man shoulders the burden of establishing that she is a qualified individual "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position [she] holds or desires." 42 U.S.C.A. § 12111(8) (West 1995). Hence, a "qualified person is one who is able to meet all of a program's requirements in spite of his handicap," Southeastern Community College v. Davis, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). Integrating these requirements, Hindman must "prove that at all material times [she] was able to perform the essential functions of [her] job, with or without accommodation." See McNemar v. Disney Store, Inc., 91 F.3d 610, 618 (3d Cir. 1996). To advance her claim, therefore, Hindman must initially demonstrate that she is qualified and capable of performing the job at issue, see Taub v. Frank, 957 F.2d 8, 10 (1st Cir.1992); Pushkin v. Regents of Univ. of Colo., 658 F.2d 1372, 1385 (10th Cir.1981), because only a qualified individual may assert a claim of discrimination under the ADA, see Kennedy v. Applause, Inc., 90 F.3d 1477, 1480 (9th Cir.1996); Tyndall, 31 F.3d at 212. If Hindman fails to meet the Defendants' legitimate job expectations, then the Defendants are entitled to summary judgment because Hindman has not made out a prima facie case of retaliatory discharge. See Ennis, 53 F.3d at 61–62 (explaining that an ADA plaintiff failed to meet her employer's legitimate expectations and thus the employer was entitled to summary judgment); Tyndall, 31 F.3d at 212 (holding that a defendant-employer in an ADA action was entitled to summary judgment because the plaintiff-employee was not qualified for the position). Here, the doctrine of judicial estoppel forecloses Hindman's satisfaction of this element because she previously asserted that she is disabled and therefore unable to perform her duties.

■ The doctrine of " '[j]udicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in

tion existed between the protected activity and the adverse employment action). Because of this virtual identity of analysis under the federal antidiscrimination statutes, the court need only ana-

lyze Hindman's claims under a single scheme, rather than analyzing each claim separately under the ADA and Title VII.

prior litigation. The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process.'" *Lowery v. Stovall,* 92 F.3d 219, 223 (4th Cir.1996) (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.,* 65 F.3d 26, 28–29 (4th Cir.1995)). Underpinning the doctrine are "consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings." *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir.1990) (alteration in original) (internal quotation marks omitted), *cert. denied,* 501 U.S. 1260, 111 S.Ct. 2915, 115 L.Ed.2d 1078 (1991). Judicial estoppel mandates that "a party [who] assumes a certain position in a legal proceeding, and succeeds in maintaining that position … may not thereafter, simply because his interests have changed, assume a contrary position…." *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895). Holding parties to their positions, judicial estoppel frowns on "intentional self-contradiction … as a means of obtaining unfair advantage in a forum provided for suitors seeking justice," *Scarano v. Central R.R.,* 203 F.2d 510, 513 (3d Cir.1953).

 As a shield to protect the integrity of the courts, the doctrine is an instrument of the courts, not of the parties, and thus invoked at the court's discretion, as the equities of the case demand. *See Rissetto v. Plumbers & Steamfitters Local 343,* 94 F.3d 597, 601 (9th Cir.1996); *McNemar,* 91 F.3d at 616–17. As an equitable doctrine, judicial estoppel escapes ironclad characterization and rigid application, *see Lowery,* 92 F.3d at 223 & n. 3, and its application hinges on the facts of each particular suit, *see McNemar,* 91 F.3d at 617. In the Fourth Circuit, application of judicial estoppel is a matter of federal law, *see Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1167–68 n. 4 (4th Cir.1982), and this precept is particularly apropos if, as here, the court's jurisdiction is premised on a federal question, rather than diversity of citizenship, *see Lowery,* 92 F.3d at 223 n. 3; *see also Rissetto,* 94 F.3d at 601–04 (discussing whether application of judicial estoppel is a matter of federal or state law and noting that the courts have taken divergent, if generally implicit, views regarding resolution of this

issue and noting further that the Fourth Circuit has most conclusively stated that the matter is one of federal law). In order for the doctrine to apply, administrative and quasi-judicial proceedings suffice; the prior litigation need not actually transpire in a court, *see id.* at 604; *Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420, 1427 (7th Cir. 1993); *Simo. v. Home Health & Hospice Care,* 906 F.Supp. 714, 718 (D.N.H.1995), because " '[t]he truth is no less important to an administrative body acting in a quasi-judicial capacity than it is to a court of law,'" *Muellner v. Mars, Inc.,* 714 F.Supp. 351, 357 (N.D.Ill.1989) (quoting *Department of Transp. v. Coe,* 112 Ill.App.3d 506, 68 Ill.Dec. 58, 60, 445 N.E.2d 506, 508 (1983)). Amalgamating these principles, the elements of judicial estoppel are: (1) the party to be estopped is attempting to assert a position inconsistent with a position in a prior judicial or quasi-judicial proceeding; (2) the prior inconsistent position was accepted by the prior judicial or quasi-judicial body; and (3) the party to be estopped is attempting to seek an unfair advantage through intentional machination. *See Lowery,* 92 F.3d at 224.

Application of these principles leads to the inexorable conclusion that Hindman is judicially estopped from asserting her retaliation claim because she cannot establish a prima facie case of a violation under the ADA. Specifically, Hindman cannot prove that she was a qualified individual for purposes of the ADA because in her prior administrative proceedings before the SSA she posited that she was, and is, totally disabled. Hindman, therefore, is asserting inconsistent positions depending on the nature of the claim she is advancing, and judicial estoppel precludes assertion of such conflicting stances.

a.

First, Hindman is undeniably attempting to assert a position here that is inconsistent with the position she asserted in obtaining social security benefits from the SSA. To receive social security benefits, Hindman must be declared "disabled" by the SSA. *See* 42 U.S.C.A. § 416(i) (West Supp.1996). For purposes of the Social Security Act, a disability is the:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

*Id.* § 423(d)(1)(A) (West Supp.1996). The implementing regulations provide that "[t]o meet this definition, [the claimant] must have a severe impairment, which makes [the claimant] unable to do [his] previous work or any other substantial gainful activity which exists in the national economy." 20 C.F.R. § 404.1505 (1996).

Indisputably, Hindman obtained disability benefits from the SSA because she was declared "totally disabled," and the record abundantly demonstrates this fact. In awarding Hindman disability benefits, the SSA concluded that Hindman had been totally disabled as of July 11, 1994. In reaching this conclusion, the SSA observed that Hindman's medical experts opined that she labored under a considerable disability that severely impaired her ability to work, which, of course precluded substantial gainful employment. Moreover, the SSA noted that Hindman's prognosis was poor. Hindman's contention of disability before the SSA precludes her from attempting to repudiate her disability in this proceeding. *See McNemar,* 91 F.3d at 615–16 (applying judicial estoppel to prevent a plaintiff from asserting an ADA claim because the SSA, at the plaintiff's behest, previously determined that the plaintiff was disabled); *Griffith v. Wal-Mart Stores, Inc.,* 930 F.Supp. 1167, 1169–74 (E.D.Ky. 1996) (same); *Cline v. Western Horseman, Inc.,* 922 F.Supp. 442, 446–47 (D.Colo.1996) (same); *Simo,* 906 F.Supp. at 717–21 (same in connection with an RA claim).

In addition to the determination of disability reached by the SSA in the prior proceedings, in preparation for this litigation Owens testified in his deposition that Hindman's depression "would have significantly interfered with [her] ability to work." (Owens Deposition at 13). Opining further, Owens stated that in all likelihood Hindman would remain incapable of work until June 1, 1996, (*id.* at 16), and stated that he testified that

she was disabled in her proceedings before the SSA, (*id.* at 18). In a similar vein, Smith testified in conjunction with the proceedings before the SSA and the present suit that Hindman was incapable of performing her job as of July 1994 and remained incapable of work performance. (Smith Deposition at 19–24). This evidence from her health care professionals proves that Hindman was disabled. *See Kennedy,* 90 F.3d at 1481 (noting the conclusive nature of a physician's opinion that the plaintiff was disabled); *Reigel v. Kaiser Foundation Health Plan of N.C.,* 859 F.Supp. 963, 967–70 (E.D.N.C.1994) (same).

Apart from the testimony of Owens and Smith, Hindman submitted two claim forms for continuing disability benefits dated respectively January 1995 and February 1996 stating that she was disabled and thus unable to work, as well as admitted in her deposition in preparation for the instant suit that she applied for and received disability benefits. In addition to this plethora of evidence proving that Hindman was disabled, her own counsel asserted in a letter dated May 1, 1996, in connection with the instant suit that "Hindman has been found to have been permanently and totally disabled since July 1, 1994." (Attachment to Owens deposition, Defendant's Exhibit 3). Beyond cavil, this evidence demonstrates that Hindman was disabled. *See McNemar,* 91 F.3d at 615–16 (observing that claims benefits forms from an ADA plaintiff asserting that plaintiff is disabled judicially estops plaintiff from asserting to the contrary in a subsequent proceeding); *Kennedy,* 90 F.3d at 1481 (noting the conclusive nature of representations made on disability forms and in the plaintiff's deposition that she was disabled); *Reigel,* 859 F.Supp. at 967–70 (recognizing that the correspondence outlining the plaintiff's disability between an ADA plaintiff and her physicians and insurers establishes disability). Thus, Hindman, her health care professionals, and her legal counsel, considered Hindman disabled.

Recognizing her quandary in attempting to assert an ADA claim, Hindman inartfully attempted to create a genuine factual dispute in her deposition as to her ability to work by disagreeing with her physicians that she was

disabled and unable to work. This "uncorroborated and self-serving" testimony, however, cannot give rise to a genuine factual dispute. *See Kennedy,* 90 F.3d at 1481 (affirming a grant of summary judgment despite the plaintiff's testimony that she was not disabled for purposes of the ADA because her physicians concluded that she was disabled for purposes of receiving disability benefits). Moreover, in the wake of this testimony, the evidence is so one-sided that the Defendants must prevail as a matter of law. *See Harleysville Mutual Ins. Co. v. Packer,* 60 F.3d 1116, 1120 (4th Cir.1995) (explaining, in connection with affirming a grant of summary judgment, that if the evidence is so one-sided, then that position prevails as a matter of law); *see also Kennedy,* 90 F.3d at 1480 (agreeing with the district court that self-serving, inconsistent deposition testimony did not create a genuine factual dispute capable of defeating a properly supported motion for summary judgment). Because Hindman is now attempting to assert that she is not disabled for purposes of prosecuting the present suit, while formerly she devoted her energies to establishing that she was disabled in order to receive disability benefits, she is most assuredly asserting inconsistent positions, thereby satisfying the first element of judicial estoppel.

b.

There is no dispute that the SSA accepted Hindman's prior inconsistent statement. Indeed, the SSA's ruling awarding benefits was submitted as evidence in this suit. Because Hindman would not have been entitled to benefits were she not disabled, then obviously she can only collect benefits if she established by a preponderance of the evidence that she is disabled. *See* 42 U.S.C.A. §§ 405(g), 416(i). Accordingly, the second element of judicial estoppel has been met.

c.

The final element of judicial estoppel is that the party sought to be estopped is attempting to seek an unfair advantage, and the instant suit incarnates that principle. Here, Hindman went to great lengths to establish that she became disabled as of July 1994, and her efforts proved successful because the SSA adjudged her disabled as of

that date and concomitantly awarded retroactive disability benefits. Had Hindman not mustered the necessary burden of proof to sustain her disability, she would not have received benefits. *See* 20 C.F.R. § 404.1520(e), (f) (1996) (providing for a sequential, five-step process to determine disability and placing the initial burden of establishing a prima facie case on the claimant, which, if satisfied, shifts the burden to the Government to prove that the claimant can perform other work given his disability); *Shively v. Heckler,* 739 F.2d 987, 989 (4th Cir.1984) (recognizing that a claimant for disability benefits shoulders the burden of mustering substantial evidence to support his claim); *see also Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (explaining that if substantial evidence supports the decision to award disability benefits, a reviewing court must sustain the award of benefits). Not only did Hindman establish her initial disability, but she has submitted claim forms for continuing disability benefits attesting to the enduring quality of her disability. Until instituting the present suit, therefore, Hindman was a devotée of the fact that she was disabled.

Now, however, Hindman seeks to assert an ADA claim against the Defendants—possibly because her continuing disability benefits may soon expire—and an element of an ADA claim is that Hindman prove she can adequately perform her duties, which is, of course, the antithesis of her former position. In the colorful metaphors of the decisional law, Hindman is "speak[ing] out of both sides of her mouth with equal vigor," *Reigel,* 859 F.Supp. at 970, "blowing hot and cold as the occasion demands," *Allen,* 667 F.2d at 1167 n. 3, attempting to "have [her] cake and eat it too," *Duplan Corp. v. Deering Milliken, Inc.,* 397 F.Supp. 1146, 1177 (D.S.C.1974), by presenting an "argument 'too much to take,'" *Lowery,* 92 F.3d at 225, and this court likewise will not allow her to treat her disability as a garment that she can don and remove as the mood strikes her. Permitting Hindman to proceed with this argument is the very height of countenancing an unfair advantage through manipulation of the judicial process. The elements of judicial estoppel are there-

fore complete, so the court applies the doctrine to preclude Hindman from bringing her suit.

In rendering this ruling, this court follows the well-reasoned opinions of other courts that have addressed this issue. A review of the case law reveals that the courts uniformly apply judicial estoppel to prevent an ADA plaintiff from first contending that he is disabled in order to receive disability benefits and subsequently asserting in an ADA suit that he is a qualified individual. *See, e.g., McNemar,* 91 F.3d at 616–21; *Griffith,* 930 F.Supp. at 1170–71; *Cline,* 922 F.Supp. at 445–47; *Lewis v. Zilog, Inc.,* 908 F.Supp. 931, 945 (N.D.Ga.1995); *Reiff v. Interim Personnel, Inc.,* 906 F.Supp. 1280, 1290–91 (D.Minn.1995); *Nguyen v. IBP, Inc.,* 905 F.Supp. 1471, 1484–85 (D.Kan.1995); *Cheatwood v. Roanoke Indus.,* 891 F.Supp. 1528, 1538 (N.D.Ala.1995); *Garcia–Paz v. Swift Textiles, Inc.,* 873 F.Supp. 547, 554–55 (D.Kan.1995); *Reigel,* 859 F.Supp. at 965–70; *see also Rissetto,* 94 F.3d at 604 n. 4 (recognizing that many courts judicially estop plaintiffs from asserting ADA claims if they applied for disability benefits); *August v. Offices Unlimited, Inc.,* 981 F.2d 576, 581 (1st Cir.1992) (applying judicial estoppel to preclude a plaintiff's suit in interpreting a Massachusetts analogue to the ADA); *Beauford v. Father Flanagan's Boys' Home,* 831 F.2d 768, 771 (8th Cir.1987) (holding that a plaintiff cannot assert an RA claim because the plaintiff admitted she could not perform the duties required of the job), *cert. denied,* 485 U.S. 938, 108 S.Ct. 1116, 99 L.Ed.2d 277 (1988); *Simo,* 906 F.Supp. at 718–20 (same). The rationale supporting the grant of summary judgment in favor of the Defendants is clear because Hindman, having reaped the benefits of disability, may not now disavow her disability in order to prosecute an ADA claim. An award of disability benefits conflicts with the principles of the ADA, which "was designed to prohibit discrimination within the ambit of an employment relationship in which the employee is potentially able to do the job in question," *Beauford,* 831 F.2d at 771, because Hindman cannot qualify for disability benefits while simultaneously being able to "perform the essential functions of the employment position that such

individual holds or desires," 42 U.S.C.A. § 12111(8). Consonant with these authorities, this court concludes as a matter of law that Hindman is judicially estopped from asserting her ADA claim because she is not a qualified individual, and consequently, cannot perform her work.

2.

 Hindman also cannot establish causation, the fourth element of her prima facie case, because the adverse action transpired *prior* to the conduct of which Hindman complains. The gravamen of Hindman's retaliation claim is that the Defendants discharged her for filing a discrimination complaint with SCHAC and the EEOC. The fatal flaw with this argument is that Hindman filed her initial administrative complaints with SCHAC and the EEOC in December 1994 and her amended administrative complaints with these agencies in May 1995; but she was discharged in August 1994. Therefore, Hindman was terminated from employment well *in advance* of filing her administrative complaints. There can simply be no causation for a retaliatory discharge claim because the alleged retaliatory conduct transpired prior to the events that allegedly triggered the adverse action. The requisite causal connection for retaliation claims can be established only if the protected activity preceded the alleged retaliatory conduct. *See Grant v. Bethlehem Steel Corp.,* 622 F.2d 43, 46 (2d Cir.1980). The courts have noted that if the challenged conduct precedes the protected activity, causation is absent, and consequently a prima facie case cannot be satisfied. *See Sweat v. Peabody Coal Co.,* 94 F.3d 301, 305 (7th Cir.1996) (sustaining a grant of summary judgment in favor of an employer because the employee complained of retaliatory discharge based on filing a claim for benefits after he had already been discharged and "thus he could not have been terminated as a result of his filing the claim"); *Wanamaker v. Columbian Rope Co.,* 907 F.Supp. 522, 535 (N.D.N.Y.1995) (noting that discharge cannot be retaliatory if the plaintiff has already been discharged and thus the plaintiff cannot make out a prima facie case under the ADEA); *Jackson v. Lyons Falls Pulp & Paper, Inc.,* 865 F.Supp.

87, 95 (N.D.N.Y.1994) (holding that a discrimination plaintiff cannot establish a prima facie case for want of causation if the adverse action occurred prior to filing an EEOC complaint); *see also Pantoja v. Holland Motor Express, Inc.*, 965 F.2d 323, 330 (7th Cir. 1992) (observing that if the employer did not know of the protected activity that the plaintiff posited led to the adverse action, then there is no causation).

Perhaps recognizing that she cannot demonstrate causation, Hindman made vague allusions in her deposition to the Defendants' "blackballing" her subsequent to her termination, but such supposition cannot stave off the Defendants' well-supported motion for summary judgment. Even assuming that Hindman can assert a retaliation claim under the circumstances of this case, she admitted in her deposition that she possessed no information or evidence tending to prove that potential employers ever contacted the Defendants, moreover, concerning any evaluation, negative or otherwise, that the Defendants rendered. Such rank speculation cannot defeat summary judgment. *See Ennis,* 53 F.3d at 62 (affirming a grant of summary judgment in an ADA suit and holding with respect to the causation element of the prima facie case that unsupported speculation and multiple inference do not causation make); *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985) (explaining, in connection with a Title VII suit, that speculative assertions cannot create a genuine issue of material fact). There is a complete absence of evidence, therefore, regarding causation. Hindman has failed to establish a prima facie case regarding the retaliation claim, so the court is compelled to grant summary judgment in favor of the Defendants respecting that claim.

### B.

Hindman's second claim is likewise based on the ADA. According to Hindman, the Defendants discriminated against her based on her disability and failed to accommodate her. The court need not linger on this claim because it fails for the same reason her retaliation claim fails, namely, that she is judicially estopped from asserting this claim because she is not qualified to perform her work because she is disabled. Accordingly, for the reasons articulated in Part II.A.1 of this opinion, Hindman cannot assert this claim.

Even declining to apply judicial estoppel, the undisputed material facts mandate summary judgment in favor of the Defendants on this claim. The Ninth Circuit addressed this precise issue in *Kennedy*. Kennedy represented to the SSA that she was disabled and therefore entitled to benefits. In advancing her claim for benefits, Kennedy proffered medical evidence from her physician that concluded that Kennedy was and had been disabled, thereby rendering her unable to work. *See Kennedy,* 90 F.3d at 1479–80. Subsequently, Kennedy attempted to assert an ADA claim against her employer, and apparently cognizant of the fact that she must be a qualified individual to make a prima facie case, she stated in her deposition that she was able to perform her job. *See id.* at 1480. Kennedy testified to her ability to work despite "her detailed and definite sworn statements to the contrary on her disability benefit claim forms," as well as her physician's opinion. *See id.* The Ninth Circuit held that Kennedy failed to establish a prima facie case because she was not a qualified individual, given that she was disabled. *See id.* at 1481–82. In reaching this holding, the court expressly eschewed Kennedy's disingenuous attempt to create a material issue of fact via her deposition testimony:

> Kennedy's statements on state disability benefit and ... (SSA) claim forms corroborate [her physician's] assessment that she was totally disabled.... On these claim forms, Kennedy represented she was completely disabled for all work-related purposes. Her deposition testimony in this case in support of her ADA claim to the effect that she was not totally disabled is uncorroborated and self-serving. Moreover, this deposition testimony flatly contradicts both her prior sworn statements and the medical evidence. As such, we conclude her deposition testimony does not present "a sufficient disagreement to require submission to a jury."

*Id.* at 1481 (quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12). In affirming a grant of summary judgment in favor of Kennedy's employer, the court declined to apply the doctrine of judicial estoppel, observing that because there were no disputed material facts, applying judicial estoppel was "unnecessary." *See id.* at 1481 n. 3.

Under *Kennedy,* even if judicial estoppel did not bar Hindman's suit, there is no genuine issue as to any material fact. To reiterate, only a qualified individual with a disability may state a claim for discrimination under the ADA. *See White,* 45 F.3d at 360; *Tyndall,* 31 F.3d at 212. The ADA defines a qualified individual as an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.A. § 12111(8). If, therefore, Hindman cannot perform her duties, she is not qualified, and in turn, if not qualified, she cannot establish a prima facie case of discrimination. *See Ennis,* 53 F.3d at 61–62. Here, the evidence admits of a single conclusion: Hindman was not qualified because she was disabled, so no reasonable fact-finder could conclude otherwise. According to Hindman, her counsel, and her health care professionals, she was disabled from July 1994 and remains disabled. Hindman has proffered no evidence to the contrary; in fact, all of the evidence, including that advanced by Hindman, establishes categorically that she is disabled.

### C.

■ Hindman asserted a state law claim of breach of the implied covenant of good faith and fair dealing, and while the court ordinarily will not entertain a pendant state claim if any federal claims are summarily resolved, *see Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988), the court will rule on this claim because it is so meritless under established case law. As with most common law jurisdictions, South Carolina observes the common law doctrine of employment at will, *see Culler v. Blue Ridge Elec. Coop.,* 309 S.C. 243, 422 S.E.2d 91, 92 (1992). In pris-

tine form, the doctrine permits an employer to terminate an employee for any reason whatsoever or for no reason at all without incurring liability. *See Ludwick v. This Minute of Carolina, Inc.,* 287 S.C. 219, 337 S.E.2d 213, 214 (1985). While South Carolina recognizes exceptions to the doctrine, *see Small v. Springs Indus.,* 292 S.C. 481, 357 S.E.2d 452, 455 (1987), none of those exceptions apply here. Under South Carolina law, there is simply no claim for the breach of the implied covenant of good faith and fair dealing in the employment context, *see Grooms v. Mobay Chem. Corp.,* 861 F.Supp. 497, 506 (D.S.C.1991), *aff'd,* 993 F.2d 1537 (4th Cir.) (per curiam) (unpublished), *cert. denied,* 510 U.S. 996, 114 S.Ct. 561, 126 L.Ed.2d 461 (1993); *Satterfield v. Lockheed Missiles & Space Co.,* 617 F.Supp. 1359, 1361–63 (D.S.C.1985), nor could there be without violating the employment-at-will doctrine, an exception that this court declines to create and institute. Here, Hindman was an at-will employee, who was employed for an indefinite duration, which constitutes employment at will, *see id.* at 1361, and there is no evidence that Hindman's employment status was other than at-will. As Hindman testified in her deposition, she was hired for an indefinite period of time and did not work pursuant to an employment contract. Under these circumstances, Hindman cannot succeed on her state law claim; hence, the Defendants are entitled to summary judgment regarding her claim of breach of the implied covenant of good faith and fair dealing.

### III.

Respecting Hindman's retaliation claim, the court concludes that Hindman is judicially estopped from asserting this claim because she is not a qualified individual, an element of the prima facie case. Moreover, Hindman cannot prove causation as to this claim. Failing to satisfy the elements of the prima facie case, Hindman cannot prevail, and the Defendants are entitled to summary judgment with respect to this claim. Regarding her discrimination and failure to accommodate claim, again the court concludes that judicial estoppel bars this claim; alternatively, Hindman is not a qualified individual as a matter of law, which mandates summary

judgment in favor of the Defendants. Finally, the court holds that the Defendants are entitled to summary judgment with respect to Hindman's state law claim.

**IT IS SO ORDERED.**